STATE of Maine

v.

Richard **LIZOTTE**.

Supreme Judicial Court of Maine.

Aug. 8, 1969.

Foahd J. Saliem, County Atty., Augusta, for plaintiff.

Alan C. Sherman, Waterville, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEBBER, Justice.

On appeal. Defendant was convicted by a jury of making a threatening communication which is made a felony by 17 M.R. S.A., Sec. 3701.

The first point of appeal is stated in these terms:

"1. The Court erred by not permitting defendant's request to have the misdemeanor, an assault and battery upon a police officer, Docket No. 3503 and the felony, threatening communication, Docket No. 3546, tried at the same time before the jury on July 10, 1968."

The record does not disclose the motion for joinder, the proceedings thereon or the decision of the Court below disposing of the motion. The matter is not before us on appeal. Such a decision is of course

purely within the discretion of the presiding Justice under M.R.Crim.P., Rule 8.

The evidence discloses that the defendant engaged in a street brawl in the course of which he struck the complaining officer in the face and resisted arrest. After he had been arrested and placed in a police cruiser, he spoke to the officer who was then standing beside the car, and said "Michaud, pizza maker—this is a promise. I am going to get you in an alley and you won't be coming out of it. When I am done with you, you won't be moving. You have had it, cop. I will get you."

Appellant asserts that error was committed when the Justice below excluded questions on cross-examination pertaining to apprehension or fear on the part of the complaining officer. No such ruling is disclosed by the record. The officer was asked, "Did it (the above quoted statement made by defendant) worry you?" Upon objection and after colloquy, appellant's counsel stated, "I will withdraw the question and ask this question." Thereafter the cross-examination continued to its close without further interruption. No error is shown.

■ In his points of appeal appellant seeks to challenge certain instructions which the Justice below either gave or declined to give to the jury. The Legislature has by statute created an offense which was unknown to the common law. We are therefore constrained to interpret 17 M.R.S.A., Sec. 3701 and are not greatly aided by cases in other jurisdictions. In State v. Cashman (Me.1966) 217 A.2d 28, 29 we noted that the word "threat" connotes "menace," that "the circumstances under which the threat is uttered and the relations between the parties may be taken into consideration" and that "[t]he threat must also be such as would ordinarily create alarm." In his instructions to the jury, after reading the statute and defining "threat" generally, the Justice below carefully and accurately summarized the applicable law and we quote those portions of the charge which provide the essential guidelines:

"You have heard the language which has been testified to here, and it is for you to find as a fact beyond a reasonable doubt what was said, what was in fact said, and for you to put a common sense interpretation upon that language to determine as a fact what this language means in the circumstances and on the occasion and under the conditions in which you find the language was used. * * * A threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him. It is wilfully made if, in addition to comprehending the meaning of his words, the maker voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution. Note that word 'apparent.' When the unlawful threat is knowingly and wilfully made, the offense is complete, so that the existence of an intention to carry out the threat, or a subsequent abandonment of the bad intent with which the threat was made, is immaterial. Although idle talk or jesting will not constitute the crime, the accused cannot be regarded as having used his language only as a joke because of the fact that he may have had no intention to carry out his threat. The motive which prompts the utterance of a threat is immaterial. To bring a case within the statute no evil purpose or malice is requisite other than an intention to give utterance to words which to the accused's knowledge were in the form of, and would be naturally understood by the hearers, as being a threat. * * * An oral threat must have been made to or in the hearing of some person. It is not necessary that the person making the threat actually intends to execute his threat. * * * A threat is knowingly made if the maker comprehends the meaning of the words used, and wilfully made if, in addition to comprehending their meaning, he voluntarily and inten-

tionally utters them as the declaration of an apparent determination to carry them into execution, and a bad purpose is not necessary."

Other portions of the charge are not challenged in the points of appeal. At the close of the instructions counsel for defendant offered no specific objections to the charge as given but did lodge with the Court five requested instructions. The presiding Justice declined to give the instructions in the form requested but did give an additional explanatory instruction relating to his use in the main charge of the phrase "and a bad purpose is not necessary." After a suitable preliminary introduction, the Court said:

"Now, I would suggest to you that it is the policy of the law that good motives do not justify taking the law into your own hands, or bad motives cannot justify this sort of thing. When we say a bad purpose is not necessary to this offense, I think what is meant here is that, even supposing the defendant, as he said on the witness stand, thought his arrest under these circumstances was improper, that this might even be a good purpose, if it was in fact improper, to see that the law of the land was complied with. But there are other means of accomplishing this purpose than a threat. So, whatever the intention or purpose which prompts the threat in the first place, however sincere I may be that my neighbor is doing wrong, that he is violating the law, I have no right to induce a reversal of his conduct, or attempt to induce a reversal of his conduct, by the use of a threat. Legal process is the only redress available, the only proper redress available. I think this is the meaning of the term 'bad purpose' in this case, because a man might sincerely think he is doing right, and yet the threat would be unprivileged. And, of course, if he felt he was doing wrong, his threat is unprivileged in any event."

No objections were noted to the charge as thus expanded and we must assume that they were then satisfactory to the defendant.

After the jury had deliberated for some time, they returned to the courtroom and requested a restatement of the legal definition of a threat. The Justice responded in these terms:

"Now, I am going to quote right out of Webster's so there won't be any misunderstanding on this. The legal definition, and this is the definition of 'threat' as it is used in the law: 'The expression of an intention to inflict evil or injury on another. The declaration or indication of an evil loss or pain to come. Menace, threatening, denunciation, and sometimes in the law specifically an expression of an intention to inflict loss or harm on another by illegal means, especially when effecting coercion or duress on the person threatened.' Now, here there is no evidence, and the State does not contend, that anybody was being coerced to part with any property or to do any act. This was simply, in this instance, what the State is saying, that there was an expression of an intention to inflict loss or harm on another by illegal means."

In response to a statement by an individual juror, in lieu of a question, "that in one place there it was mentioned that it wasn't a crime to give a threat if it wasn't intended to be carried out," the Justice responded as follows:

"That is not the instruction that I gave you. I said that the man didn't have to have any present ability to carry it out. But the gist of this offense is the threat to do injury. The mere saying, the declaration, to another that you are going to injure him at some future time, seriously made, even though you later repent it, or even though you may ultimately have no intention of carrying it out. The gist of this whole offense is the possibility of inducing fear in the mind of another person to his disquiet. This is a statutory crime. This crime didn't exist in

common law. It is one that arises by statute, and it is now contrary to the statute to threaten to do harm to a person, to another person. * * * You see, it is the harm, it is the disturbance, to the other person who can hear it, his fear, his insecurity that is induced, that is the gist of this crime. * * * It has been called to my attention that it is not required that the act shall actually result in putting the threatened individual in fear. The threat doesn't even have to be particularly communicated to that person, the intended victim, because the statute again says, 'Whoever makes, publishes—.' Now, to publish is to proclaim aloud in the hearing of anyone. 'Or sends to another any communication, written or oral containing a threat to injure the person or property, of any person, shall be punished,' and so forth. * * * So, you see, a threat can be fairly far-reaching in its effect. It doesn't even have to reach the threatened person's ears directly. It can reach him through publication."

Again, at the close of all instructions, no objections were offered and no requests for further instructions presented. Although on this posture of the record, the appellant has effectively saved no points of appeal with reference to the instructions to the jury, we have quoted from the charge at length partly in order to lay at rest any possible claim that appellant was prejudiced thereby, but more importantly because we deem that these instructions, viewed in their totality, fairly and accurately state the law applicable to an enforcement of 17 M.R.S.A., Sec. 3701. We are mindful of the fact that we have heretofore had no occasion to develop any substantial volume of precedent to assist in the interpretation of this statute. Under well established principles we do not review a charge by selecting phrases or sentences at random or out of context but consider the probable impact upon the collective minds of the jury of the entire presentation. In no respect were these instructions, taking into account all of the clarifications and explanations contained therein, less favorable to the defendant than he could justly require.

■ At the close of the State's case the defendant moved for judgment of acquittal, which motion was denied. The defendant then introduced evidence and did not renew his motion at the close of all of the evidence. The motion thus made was thereby waived. M.R.Crim.P., Rule 29; Glassman, Maine Practice, Commentary, Sec. 29.2. However, the defendant seasonably filed a motion for new trial, also denied, and this motion is made the basis of a point of appeal. We therefore look to the evidence to see whether or not it will support a conviction.

■ The jury could properly find that the language employed by the defendant fairly imported a promise or declaration of a present intent sometime in the future to kill the complaining officer. Although couched in the language of the street, the expression was readily understandable by the ordinary hearer as "pregnant with the promise of evil." State v. Cashman, supra at page 30. The jury could properly take into account the circumstances which then existed and the relation between the defendant and the person threatened. It matters not whether the defendant had or had not the intention later to carry out the threat. The essence of an oral threat is that it is a verbal act and if that act is of such a nature as to convey the menace to an ordinary hearer, the statute is violated. No more does it matter whether or to what degree the threat engenders fear or intimidation in the intended victim. Some men are braver than others and less easily intimidated. We do not ask whether or not this defendant succeeded in frightening a police officer. We ask only whether or not he used words which would under the circumstances then existing be heard by an ordinary person as being spoken not in jest but as carrying the serious promise of death. We are satisfied that the evidence

meets these requirements and supports the verdict.

Appeal denied.

TAPLEY, J., was present at the argument but retired before rendition of decision.