STATE of Maine

v.

Roxanne PORTER.

Supreme Judicial Court of Maine.

March 28, 1978.

Joseph A. Wannemacher, Asst. Dist. Atty. (orally), Alfred, for plaintiff.

Roberts, Shirley & Humphrey by Thomas E. Humphrey (orally), James J. Shirley, Sanford, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

■ The defendant, Roxanne Porter, entered a plea of guilty to an indictment charging her with the offense of "terrorizing" in violation of section 210 of the Criminal Code.[1] She now appeals from the judgment entered on her guilty plea, alleging that the statute under which she was indicted is unconstitutional on its face for overbreadth.[2]

We deny the appeal.

## I. Attack on Constitutionality of Section 210

The defendant concedes that she committed the acts charged by the indictment, namely:

"That on or about the 20th day of October, 1976, in the Town of Sanford, County of York and State of Maine the . . . defendant Roxanne Porter, did communicate to another person, namely Tina Fanjoy, an employee of Sprague Electric Co., a threat to commit a crime of violence, dangerous to human life, to wit: by then and there stating to said Tina Fanjoy that a bomb had been placed upon the premises of said Sprague Electric Co., thereby causing the evacuation of the said premises by the employees of Sprague Electric Co."

---

1. 17–A M.R.S.A. § 210 (enacted 1975; eff. May 1, 1976) (1977 Supp.) provides:

   "A person is guilty of terrorizing if he communicates to any person a threat to commit or cause to be committed a crime of violence dangerous to human life, against the person threatened or another, and the natural and probable consequence of such a threat, whether or not such consequence in fact occurs, is:

   "A. To place the person to whom the threat is communicated in reasonable fear that the crime will be committed; or

   "B. To cause evacuation of a building, place of assembly or facility of public transport."

2. Prior to pleading guilty, the defendant moved to dismiss the indictment, Rule 12(b)(2), M.R. Crim.P., claiming that section 210 is both overbroad and void for vagueness. The vagueness issue, neither briefed nor argued on appeal, was waived. *State v. DeCesere*, Me., 379 A.2d 1221 (1977).

Having admitted to the acts charged, the defendant claims that section 210 is unconstitutionally overbroad on its face in that it proscribes speech protected by the First Amendment. Since we find that the statute is not overbroad, we reject the appellant's attack.

■ Before proceeding, we note that appellant's standing to attack the constitutionality of the statute, if it otherwise existed, was not lost by her guilty plea. If section 210 suffers from fatal overbreadth, it follows that the defendant's indictment under that statute was invalid and that the Superior Court was without jurisdiction to entertain her plea and to enter judgment and sentence thereon. Jurisdictional questions, unique in degree of importance, are among the few exceptional issues which a defendant who has pled guilty may raise either by post-conviction habeas corpus proceeding or, as here, on direct appeal from the judgment. *See State v. Small,* Me., 381 A.2d 1130 (1978); *Dow v. State,* Me., 275 A.2d 815, 821 (1972).

■ Defendant's charge of overbreadth is predicated upon her argument that section 210 by its terms applies to a person who communicates a threat merely for the purpose of warning the person threatened by a third party, and that such a person comes within the protection of the First Amendment. We conclude that section 210 does in fact proscribe, under certain circumstances, the communication of a threat by one who has the intent of merely warning the person threatened. It is plain

to us, in view of the language used in section 210 and the unspecified elements of the offense of "terrorizing," that the legislature intended to penalize him who actually "threatens," either (1) in the usual sense of one who, having originated the threat of a crime of violence, personally communicates that threat to another person, or (2) one who, although not the originator of the threat, transmits another's threats under such circumstances and in such a way that the threat, to any objective observer, has "become his own." In either sense, as the statute only penalizes one who "threatens," the statute suffers no overbreadth. Anyone who "communicates a threat" as we construe the statutory term forfeits the protection of the First Amendment.

■ Section 210 makes a person guilty of terrorizing if he "communicates to any person a threat", etc. That language is identical, for practical purposes, to the opening language of former section 3701 of Title 17, from which section 210 is largely derived, which penalized "[w]hoever makes, publishes or sends to another any communication . . . containing a threat".[3] Both word formulations, in common parlance and in legal effect, mean simply whoever "threatens."[4] In each statute, the more cumbersome form of expression was apparently adopted for grammatical convenience to fit with the balance of the sentence. The code's name for the section 210 crime—"terrorizing"—implies an intent to punish a particular type of "threatening."[5] In any event, insofar as ambiguity may be

---

3. 17 M.R.S.A. § 3701 (1964) (repealed by P.L. 1975, ch. 499, § 20, eff. May 1, 1976) provided in full: "Whoever makes, publishes or sends to another any communication, written or oral, containing a threat to injure the person or property of any person shall be punished by a fine of not more than $500 or by imprisonment for not more than 5 years, or by both. If the communication is written and is anonymous or signed by any other than the true name of the writer, the punishment shall be a fine of not more than $1,500 or imprisonment for not more than 10 years, or both. If any such threat is against the person or property or member of the family of any public official, the punishment shall be imprisonment for not more than 15 years."

4. *Cf. Model Penal Code* § 211.3 (1962), which makes a person guilty of making "threats" if he "*threatens* to commit any crime with purpose to terrorize the person threatened . . . ." (Emphasis added)

5. Section 209 of the code, immediately preceding section 210, provides for the separate offense of "criminal threatening." As the official comment to section 210 observes, a major distinction between section 210 "terrorizing" and section 209 "criminal threatening" is that the former requires no showing that any person is put in actual fear of bodily injury, whereas fear of imminent bodily injury is a necessary element of the offense of "criminal threatening."

found to exist in the phrase "communicates to any person a threat," that phrase must, to the extent consistent with the apparent intent of the statute, be given a narrow application, in keeping with the principle that penal statutes are to be strictly construed. *State v. King,* Me., 371 A.2d 640 (1977).

Section 210 thus punishes only him who "threatens" the crime of violence dangerous to human life. The word "threat" is by definition "an expression of intention to inflict evil or injury on another; the declaration or indication of an evil, loss, or pain to come . . . ."[6] When the nub of the statutory language is focused upon, it becomes almost self-defining because of its commonly understood meaning, and

> "[w]ords of a penal statute must be given their common and popular sense, unless the act discloses a legislative intent otherwise." *State v. Heald,* Me., 382 A.2d 290, 294 (1978).

Indeed, as discussed below, this court had no difficulty in defining the word "threat," standing alone in the predecessor statute, 17 M.R.S.A. § 3701, *supra,* in a constitutionally valid way. *See e. g., State v. Cashman,* Me., 217 A.2d 28, 29 (1966).

The Criminal Code, however, goes much further in delineating the crime than merely proscribing "threatening." In addition to the act of "threatening," the code expressly requires the crime to have the further element that the "natural and probable consequence of such a threat" is either "to place the person to whom the threat is communicated in reasonable fear that the crime will be committed," or "to cause evac-

uation of a building, place of assembly or facility of public transport." This requirement that the threatening have certain probable disruptive consequences restricts application of the statute to a kind of speech that produces or is likely to produce a clear and present danger of substantive evils that Maine constitutionally may seek to prevent. *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

Our reading of section 210 is further supported by examination of this court's decisions under its predecessor statutes, the former crimes of "false bomb threats" and "threatening communications." 17 M.R.S.A. §§ 503,[7] 3071.[8] As the official comment to section 210 instructs, prior decisions construing section 3701 are helpful to understanding the scope of section 210. In *State v. Cashman, supra* at 30, this court first gave meaning to the term "threat" in section 3701. We there concluded that all the attendant circumstances, including the relationship between the parties, must be taken into account in determining whether the communication at issue is a "threat":

> "In the instant case the threat must be found, if at all, in the words 'they would take care of me' and 'they would see that I was taken care of.' *Such expressions may be completely devoid of menace under some circumstances and pregnant with the promise of evil in a different setting. Here the phrasing was designed to induce fright and alarm. . . . This was no mere warning or prediction*

---

6. *Webster's New International Dictionary of the English Language* (2d ed. 1961).

7. 17 M.R.S.A. § 503 (1964) (repealed by P.L. 1975, ch. 499, § 5, eff. May 1, 1976) provided: "Whoever gives a false report, knowing such report to be false, to anyone as to the deposit of any bomb or infernal machine in any place shall be punished by a fine of not more than $500 or by imprisonment for not more than 11 months, or by both."

8. See n.3 above. Section 3701 was originally enacted, with an emergency preamble, by P.L. 1921, ch. 146, § 3. Sections 1 and 2 of that

chapter criminalized the sending or possession of any "bombs or infernal machines." Section 503, penalizing "[w]hoever gives a false report, knowing such report to be false, to anyone as to the deposit of any bomb or infernal machine in any place," was added by separate section to the existing provisions by R.S.1957, ch. 130, § 22–A (repealed and replaced by P.L.1963, ch. 70, § 1). A common purpose, the deterrence and punishment of terroristic violence, underlies both sections 3701 and 503, and in part explains their fusion now into the single offense of terrorizing under section 210 of the code.

*as to matters outside the control of the respondents. . . . The threat was real. The promise of evil was effectively conveyed."* (Emphasis added)

Although this court had no occasion in *Cashman* to rule on the precise point, the language there employed implicitly recognized that section 3701 penalized only the communication of threatened harm from one who actually threatened it, or one who transmitted another's threat under such circumstances that, to the objective recipient of the threat, the promise of evil was the communicator's "own." In decisions subsequent to *Cashman* construing section 3701, we also consistently required as an additional element of the offense that the threat's " 'promise of evil' must be in a context of circumstances by which it gives rise to reasonable likelihood that 'alarm' or 'fear . . to his disquiet' will be induced in some person." *State v. Sondergaard,* Me., 316 A.2d 367, 369 (1974); *State v. Hotham,* Me., 307 A.2d 185, 186 (1973); *State v. Lizotte,* Me., 256 A.2d 439, 442 (1969). A close identity thus exists between the express elements of section 210 and those elements this court by judicial construction found to be essential under section 3701. That similarity buttresses our conclusion that the legislature intended section 210 to cover the same type of threatening communication previously punishable under section 3701. As *Cashman* implied in speaking of the predecessor statute, section 210 is not intended to penalize the communication of a "*mere* warning or prediction as to matters outside" the control of the person communicating the threat. We conclude that the language of section 210, like that of section 3701 before it, generates no problem of unconstitutional overbreadth.

II. *Sufficiency of the Section 210 Indictment*

◼ The present indictment for a violation of section 210 is framed exclusively in the words of section 210. It nowhere alleges in express terms that the defendant, Roxanne Porter, communicated the threat with any of the culpable mental states defined in section 10 of the code. See 17–A M.R.S.A. § 10 (1976). Because the insufficiency of an indictment to charge a criminal offense is noticeable by this court as a defect in jurisdiction,[9] we must consider whether an indictment so framed in the language of section 210 alone is defective for failure to plead any culpable state of mind beyond that implicit in the words of that section.

The starting point for analysis of the code's requirement of culpable mental states is section 11(1) of the code. That provision declares the general principle of criminal liability that a person is not guilty of a crime "unless he acted intentionally, knowingly, recklessly, or negligently, as the law defining the crime specifies, with respect to each element of the crime, *except as provided in subsection 5.*"[10] (Emphasis added) Section 11(5) specifically addresses itself to those exceptional statutes, defining crimes within the code, which do not expressly prescribe a culpable mental state "with respect to some or all of the elements of the crime." As to such a statute, "a culpable mental state is nevertheless required pursuant to subsections 1, 2 and 3, *unless* either:

"A. The statute expressly provides that a person may be guilty of a crime without culpability as to those elements; or

"B. *A legislative intent to impose liability without culpability otherwise appears.*" (Emphasis added)

◼ Section 210 nowhere expressly prescribes a culpable mental state. Although section 210 does not otherwise *expressly* state the legislature's intention to impose

---

9. We are aware that a contrary view regarding the noticeability of such a defect is espoused in P. Ballou, *"Jurisdictional" Indictments, Informations and Complaints: An Unnecessary Doctrine,* 29 Me.L.Rev. 1 (1977). We need not at present address the merits of the argument there set forth, in view of our conclusion, *infra,* that this indictment is sufficient.

10. The four culpable mental states required by section 11(1) of the code are defined in section 10.

liability without culpability, such an intention *appears* upon fair examination of the language of section 210, as we construe it, in light of the relevant decisions of this court under the predecessor statute, section 3701 of Title 17. As a consequence, no culpable mental state need be pleaded or proven by virtue of the operation of section 11(5)'s general rule.

■■■ In *State v. Lizotte, supra* at 442, we observed of former section 3701:

"It matters not whether the defendant had or had not the intention later to carry out the threat. *The essence of an oral threat is that it is a verbal act and if that act is of such a nature as to convey the menace to an ordinary hearer, the statute is violated."* (Emphasis added)

Similarly, under section 210, whether a communication constitutes a "threat" within the plain meaning of that word does *not* depend upon the subjective motivation (or intention) of the communicator.[11] A communication is a threat if it carries the promise of evil under such circumstances that a reasonable person receiving the communication would believe that such was to ensue at the hands of the communicator, or his allies. *See, e. g., State v. Cashman, supra.*

Section 210 requires in addition that a threat, to be punishable, have as a natural and probable consequence either placing the recipient of the threat in reasonable fear that the threatened crime will be committed or causing the evacuation of a "building, place of assembly or facility of public transport." That express requirement is analogous to the requirement that a threat be attended by probable disruptive consequences which we held by statutory construction to be an element of former section 3701. That additional requirement functions not only to insulate the Maine statute from First-Fourteenth Amendment attacks, *see State v. Sondergaard, supra,* but also to narrow the class of punishable threats to those which, because of their particularly injurious societal effects, merit application of the criminal sanction.

■■■ The drafters' omission from section 210 of any of the code's culpable states of mind cannot be viewed as merely inadvertent. The legislature enacted section 210 in full awareness of the predecessor statutes and the case law interpreting them. *See* Advisory Committee's Comment to section 210. As previously noted, section 210 in language bears obvious similarities to its predecessors. A punishable threat, as restrictively defined in section 210 itself, adequately describes that conduct considered to be culpable for purposes of punishment as "terrorizing." Although section 210 does not expressly provide that a person may be guilty of terrorizing without "culpability" (in the sense of one of the code's states of mind defined in section 10), the legislature's intent that such should be the case "otherwise appears."[12]

■■■ The indictment under which the defendant was convicted alleges all essential elements of the offense of terrorizing under section 210.

11. In the *Lizotte* case, the defendant had failed to preserve any objections to the jury charge. Nevertheless, this court inspected the charge to determine whether it contained any errors prejudicial to him. Those instructions stated, in part, that "[w]hen the unlawful threat is knowingly and wilfully made, the offense is complete" and that "[a] threat is knowingly made if the maker comprehends the meaning of the words used, and wilfully made if, in addition to comprehending their meaning, he voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution, and a bad purpose is not necessary." *State v. Lizotte, supra* at 440–41. After reviewing that charge as a totality, this court held that the jury had been fairly and accurately apprised of the law and, significantly, that

"[i]n no respect were these instructions . . . *less favorable* to the defendant than he could justly require." (Emphasis added) *Id.* at 442. Given the limited context in which *Lizotte* was decided, that case cannot reasonably be read as an indication by this court that the mental states of "knowingly and wilfully" constituted necessary elements of the offense of making a threatening communication under former section 3701.

12. Of course, a person is only subject to criminal liability if he "engages in voluntary conduct, including a voluntary act, or the voluntary omission to perform an act of which he is physically capable." 17–A M.R.S.A. § 51 (1976).

The entry must be:

Appeal denied.

Judgment affirmed.

POMEROY and DELAHANTY, JJ., did not sit.