
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## REDTWELVE TFONG,
### aka Redtwelve Tefong, aka Luke West,
### aka Nois West, aka Retwen Defang,
Defendant-Appellant.

Supreme Court Case No. CRA20-002
Superior Court Case No. CF0586-18

## OPINION

## Cite as: 2021 Guam 13

Appeal from the Superior Court of Guam
Argued and submitted on January 29, 2021
Via Zoom video conference

Appearing for Defendant-Appellant:
Peter C. Perez, *Esq.*
Law Office of Peter C. Perez
DNA Bldg.
238 Archbishop Flores St., Ste. 802
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Marianne Woloschuk, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 901
Tamuning, GU 96913

**E-Received**
10/20/2021 1:52:33 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]     Defendant-Appellant Redtwelve Tfong appeals his convictions for Terrorizing (as a Third Degree Felony), with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, and Assault (as a Misdemeanor).  On appeal, Tfong argues the evidence was insufficient to sustain his convictions and that the terrorizing statute under which he was convicted, 9 GCA § 19.60, is facially invalid for being unconstitutionally vague.  For the reasons below, we affirm the judgment of conviction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     A grand jury returned an indictment charging Tfong with Second Degree Robbery (as a Second Degree Felony) (two charges), Terrorizing (as a Third Degree Felony), and Assault (as a Misdemeanor).  Each felony charge came with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony.  The charges stem from an incident at the Hong Kong Center in Maite involving Ety Atipas Albert[1], Jenny Singky, and the named victim, Chris John.

[3]     At trial, the following evidence was presented.  John recalled that she and Singky met in Maite near the Hong Kong Center and had a six-pack of beer outside a convenience store.  After the two finished drinking, they walked towards the Chamorro Village, when they encountered Tfong and Albert.  John testified that, sometime during the encounter, Tfong and Albert asked her to buy the men beer at a store.  When John told the two men she had no money, John testified that

---

[1] Albert was a co-defendant with Tfong and charged in the same indictment with Second Degree Robbery (as a Third Degree Felony), Third Degree Robbery (as a Third Degree Felony), and Criminal Mischief (as a Misdemeanor).  However, the trial court entered a directed verdict acquitting Albert of his charges, except for the charge of Third Degree Robbery, which was later reduced to Theft (as a Petty Misdemeanor).

"[Tfong] said he's going to use [a] machete to cut me and [Singky]." Transcript ("Tr.") at 103 (Jury Trial, Nov. 26, 2018). John testified that Tfong had a machete with him under his clothing, and that he took the machete out but did not use it or touch her with it. John also testified that Tfong threatened to cut her belly and neck with the machete, threatened to kill her, and that she told police that Tfong kicked her in the face. Following the incident, John testified that she was "scared" and that she ran to the Hong Kong Center with Singky and called the police. *Id.* at 104, 120, 126. Wilson Ng, who owns the Hong Kong Center, testified that the two women rushed into his store and asked him to call the police.

[4]     Singky, who was with John at the time of the encounter with Tfong and Albert, testified about the incident:

> Yeah, we walking there and then we buy drink, and then we sitting down and drink. And then they walking up and then they come with us, we drink together, and then [Albert] say something to [John]. . . . [T]hen the other one [referring to Tfong] he was getting mad, then he -- he have the knife, then he take it out walking up on the stairs, we sitting down at the stairs, and then he's telling [John] to stop talking. And then he's saying . . . he want to cut me with the knife to cut me like half and half, and then telling [John] he want to cut his (sic) neck off from her body.

*Id.* at 79.

[5]     Following the incident, law enforcement officers responded to the scene after being alerted of a disturbance involving two men, one of whom was said to be brandishing a machete. Officer Kristoffer Castro testified that when he arrived on scene, he conducted a pat-down search of Tfong for the officer's safety after he had been informed by John that Tfong had threatened to cut her with a machete. Officer Castro stated that Tfong "reeked of alcohol" and that during the pat-down search, he discovered on the right side of his shorts "a machete of about 25 inches long that was hidden" and "tucked in his shorts." *Id.* at 48-49, 60. Officer Keith Jason Corpuz, who arrived with Officer Castro at the scene, testified that he saw John and Singky on the left side of the Hong

Kong Center, and that John was screaming, yelling, and pointing at Tfong. Officer Corpuz also testified that he observed that Albert had a bag on his person, and that Albert admitted to him that the bag had belonged to John.

[6]     After the close of the prosecution's case-in-chief, Tfong moved for a directed verdict of acquittal. Upon hearing arguments, the trial court granted the motion as to Tfong's two robbery charges and their accompanying special allegations. The jury thereafter deliberated and returned guilty verdicts against Tfong on the remaining charges: Terrorizing (as a Third Degree Felony)[2] with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, and Assault (as a Misdemeanor). For these crimes, the trial court sentenced Tfong to 48 months in prison, with all but 30 months suspended and with credit for time served. Following entry of the judgment of conviction, Tfong timely appealed.

## II. JURISDICTION

[7]     The court has jurisdiction over appeals from a final judgment of conviction entered by the Superior Court of Guam. *See* 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-50 (2021)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[8]     When a defendant challenges the sufficiency of the evidence by a motion for judgment of acquittal, the court reviews the trial court's denial of the motion *de novo*. *People v. Martin*, 2018 Guam 7 ¶ 8.

[9]     "The constitutionality of a statute is a question of law reviewed *de novo*." *People v. Shimizu*, 2017 Guam 11 ¶ 11 (quoting *People v. Perez*, 1999 Guam 2 ¶ 6).

---

[2] In instructing the jury as to Terrorizing (as a Third Degree Felony), the trial court stated that the People must prove beyond a reasonable doubt that Tfong "knowingly" communicated a threat to John "to commit a crime of violence dangerous to human life" against her, "the natural and probable consequence of such threat being to place [her] in reasonable fear that the crime will be committed." Tr. at 52-53 (Jury Trial, Nov. 28, 2018).

## IV. ANALYSIS

[10]     Tfong raises two issues on appeal.  First, he alleges the evidence adduced at trial was insufficient to sustain each of his convictions.  Appellant's Br. at 13 (July 29, 2020).  Second, Tfong argues that his "Terrorizing conviction must be reversed because the statute under which he was convicted, 9 GCA § 19.60, was facially invalid."  *Id.* at 27.  Before deciding whether the evidence was sufficient to sustain the convictions, we will review the terrorizing statute's constitutionality under the vagueness doctrine.

### A.   The Terrorizing Statute Is Not Unconstitutionally Vague[3]

[11]     Tfong was charged with Terrorizing under 9 GCA § 19.60, which provides:

> (a) A person is guilty of terrorizing if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable consequence of such a threat, is to place the person to whom the threat is communicated or the person threatened in reasonable fear that crime will be committed.
>
> (b) Terrorizing is a felony of the third degree.

9 GCA § 19.60 (2005).

[12]     Tfong argues the terrorizing statute is "vague on its face as it provides neither fair notice as to the type of conduct prohibited by the statute nor minimal guidelines to govern law enforcement."  Appellant's Br. at 32.  To support his arguments, Tfong asserts, without authority, that the statute is vague "because it does not state a *mens rea*, require criminal intent, establish a

---

[3] To clarify, "[i]mprecise laws can be attacked on their face under two different doctrines: overbreadth and vagueness."  *People v. Shimizu*, 2017 Guam 11 ¶ 18.  "To explain the inherent difference between vagueness and overbreadth as simply as possible, 'vagueness pertains to a lack of clarity in the actual content of a statute.  In contrast, overbreadth is present when a statute's language is so far reaching that it applies to conduct the state is not entitled to regulate.'"  *Id.* ¶ 18 n.5 (quoting John F. Decker, *Overbreadth Outside the First Amendment*, 34 N.M. L. Rev. 53, 61 (2004)).

standard of conduct, require that the threat be imminent, require an overt act, and [that] it encompasses innocent and criminal conduct alike." *Id.* at 28.[4]

[13]     In response, the People argue the statute is not void for vagueness because it "gives adequate notice of the proscribed conduct." Appellee's Br. at 27 (Nov. 3, 2020). The People also argue the objective standard that the threat communicated place a person in reasonable fear "ensures even-handed enforcement." *Id.* We agree with the People's argument despite the failure in their brief to respond to Tfong's unsupported contentions.

[14]     The void for vagueness doctrine, as adopted in this jurisdiction, is a long-standing principle in due process jurisprudence which rests on the premise that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

[15]     In *Shimizu*, this court laid out a test for determining whether a statute is void for vagueness:

> "Generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, it has been recognized that the more important aspect of [the] vagueness doctrine "is not actual notice, but the

---

[4] Tfong does not attack 9 GCA § 19.60 as being facially invalid on overbreadth grounds. *See* Appellant's Br. at 28 ("[Tfong] asserts that the Terrorizing statute is facially invalid and unconstitutionally vague."). While Tfong states repeatedly that the terrorizing statute is facially invalid because "it encompasses innocent and criminal conduct alike," *e.g.*, Appellant's Br. at 12, he provides no arguments, examples, or case law to support this statement or why the statute otherwise contravenes the overbreadth doctrine. He also provides no arguments on how the First Amendment is implicated or inhibited by the statute. *See Shimizu*, 2017 Guam 11 ¶ 20 ("[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" (alteration in original) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999))).

Furthermore, "[t]he communication of terroristic threats to another person to commit a crime of violence upon that person clearly falls outside of those communications and expressions which are protected by the First Amendment to the Constitution." *Lanthrip v. State*, 218 S.E.2d 771, 773 (Ga. 1975); *see also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992) (explaining that threats of violence enjoy no protections under First Amendment). Therefore, we decline to analyze 9 GCA § 19.60 under the overbreadth doctrine.

> other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement.

2017 Guam 11 ¶ 24 (alteration in original) (quoting *Perez*, 1999 Guam 2 ¶ 7). Accordingly, "[v]agueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.* ¶ 28 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)).

### 1. Fair notice

#### a. Title 9 GCA § 19.60 properly establishes a standard of conduct and requires an overt act

[16] On appeal, Tfong asserts that 9 GCA § 19.60 does not "establish a standard of conduct" or "require an overt act." Appellant's Br. at 28, 30-32. This argument is erroneous because a plain reading of the statute shows the requirement of an overt act and a standard of conduct that is prohibited.

[17] The terrorizing statute requires an overt act, namely "communicat[ing] to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the threat is made or another." 9 GCA § 19.60(a). The terrorizing statute also links the overt act with the requirement that the "natural and probable consequence of such a threat is to place the person to whom the threat is communicated . . . in reasonable fear that [the] crime will be committed." *Id.* The link between the overt act—the threat—and the requirement that the threatened person be placed in reasonable fear because of such conduct, was an element the court considered absent in *Shimizu*, where it ruled for the first time that a statute was unconstitutionally vague. *See Shimizu*, 2017 Guam 11 ¶¶ 24, 41. In *Shimizu*, we held that a portion of the family

violence statute, 9 GCA § 30.10(a)(2) (2005),[5] "does not adequately inform citizens of what conduct is prohibited by the statute." 2017 Guam 11 ¶ 34. We contrasted 9 GCA § 30.10(a)(2) with the terrorizing statute, implying that 9 GCA § 19.60 adequately describes a standard of conduct that is prohibited. *Id.* (explaining that appellant's conduct "may have been a clear violation of other laws, such as terrorizing," and then citing to 9 GCA § 19.60).

[18]     While communication of "a threat to commit or to cause to be committed a crime of violence dangerous to human life," 9 GCA § 19.60(a), encompasses a wide variety of behavior, it still provides a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," *Lanthrip v. State*, 218 S.E.2d 771, 772 (Ga. 1975) (quoting *United States v. Petrillo*, 332 U.S. 1, 8 (1947)) (finding that Georgia's similarly-worded terrorizing statute was not unconstitutionally vague).[6] Thus, the statute provides fair notice of prohibited conduct and "can be read and understood by a person of ordinary intelligence seeking to avoid its violation." *Id.* at 773.

### b. The lack of a *mens rea* or mental state requirement does render 9 GCA § 19.60 unconstitutionally vague

[19]     Tfong argues that 9 GCA § 19.60 is vague because it "does not state a *mens rea*" or "require criminal intent." Appellant's Br. at 28, 30-32. These assertions are true. However, while a statute without an expressed intent requirement to do a prohibited act may render a vague statute invalid, the lack of a *mens rea* in 9 GCA § 19.60 alone does not render the statute unconstitutionally vague. "Many criminal statutes in Guam explicitly contain a *mens rea* or mental

---

[5] At the time, 9 GCA § 30.10(a)(2) provided that the crime of Family Violence included "[p]lacing a family or household member in fear of bodily injury." 9 GCA § 30.10(a)(2) (2005). After issuance of our opinion in *Shimizu*, the Legislature amended subsection 30.10(a)(2) to proscribe "placing another family or household member in *reasonable* fear of *imminent* bodily injury." 9 GCA § 30.10(a)(2) (as amended by Guam Pub. L. 34-062:2 (Nov. 9, 2017)) (emphases added).

[6] Georgia's terrorizing statute at the time, which was found to be permissible in *Lanthrip*, read in part: "A person commits a terroristic threat when he threatens to commit any crime of violence, or to burn or damage property, with the purpose of terrorizing another . . . ." Ga. Code Ann. § 26-1307.

state requirement. However, some do not. For these statutes, the Legislature has enacted a catch-all provision." *People v. White*, 2020 Guam 6 ¶ 12. Under 9 GCA § 4.40 (2005), "if the definition of a crime does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established only if a person acts intentionally, knowingly or recklessly." But a culpable mental state is not required "if the offense is a violation or if the law defining the offense clearly indicates a purpose to dispense with any culpable mental state requirement." 9 GCA § 4.45 (2005). By its very wording, 9 GCA § 19.60 does not expressly require a culpable mental state.

[20]   In *State v. Porter*, 384 A.2d 429, 433-34 (Me. 1978), the Supreme Judicial Court of Maine considered the constitutionality of a similarly-worded terrorizing statute, which, like 9 GCA § 19.60, did not expressly include a *mens rea* requirement.[7]  In applying Maine's version of the catch-all provision for statutes without a culpable mental state requirement, the court held that "[a]lthough [the terrorizing statute] does not otherwise expressly state the legislature's intention to impose liability without culpability, such an intention appears upon fair examination of the language of [the statute]." *Id.* at 433-34. The *Porter* court explained that "no culpable mental state need be pleaded or proven by virtue of [its catch-all *mens rea* provision]" because "[i]t matters not whether the defendant had or had not the intention later to carry out the threat." *Id.* at 434 (quoting *State v. Lizotte*, 256 A.2d 439, 442 (Me. 1969)). The *Porter* court also reasoned that

---

[7] Maine's terrorizing statute, which was found to be permissible in *State v. Porter*, 384 A.2d 429 (Me. 1978), reads in part:

> 1. A person is guilty of terrorizing if that person in fact communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable consequence of such a threat, whether or not such consequence in fact occurs, is:

> > A. To place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed . . . .

Me. Rev. Stat. tit. 17-A, § 210(1)(A).

"whether a communication constitutes a 'threat' within the plain meaning of that word does not depend upon the subjective motivation (or intention) of the communicator." *Id.*

[21]    Similarly, the lack of a culpable mental state in 9 GCA § 19.60 is not merely inadvertent. Although the statute does not otherwise reflect the Legislature's intent to dispense with any culpable mental statute requirement, such an intention appears upon examination of how the statute operates, regardless of the *mens rea* of the person who makes the threat. But whether or not the catch-all provision applies or whether no culpable mental state need be pleaded to find a person guilty of terrorizing under 9 GCA § 19.60 is not a question that needs to be answered in this appeal. Rather, this inquiry shows that the lack of a *mens rea* does not render the terrorizing statute unconstitutionally vague because 9 GCA § 4.40 provides a mechanism in those situations.[8]

### c.    Imminence is not statutorily required under 9 GCA § 19.60

[22]    Tfong argues that 9 GCA § 19.60 is unconstitutionally vague because it does not explicitly require that a threat be imminent. The offense of terrorizing, however, does not require that the threat communicated be imminent or even actual. Rather, the statute requires only that the "natural and probable consequence of such a threat [be] to place the person to whom the threat is communicated or the person threatened in reasonable fear that crime will be committed." 9 GCA § 19.60(a). The argument by Tfong that a threat be imminent or actual for the statute to be constitutionally permissible would exclude false threats of violence, such as a false bomb threat, or threatening communications of future violence from the conduct prohibited by 9 GCA § 19.60 in contravention of legislative intent. It is clear from the language of the statute that the Legislature intended to penalize a person who communicates a threat[9] whether imminent or actual, so long as

---

[8] The trial court seemed to use the catch-all provision under 9 GCA § 4.40 to instruct the jury by attaching the culpable mental state of "knowingly" to the offense of terrorizing.

[9] The term "threat" as defined in Black's Law Dictionary means "[a] communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with

the other statutory elements are met. *See also Porter*, 384 A.2d at 431 (upholding similarly-worded terrorizing statute and explaining that statute requires no showing of actual fear).

[23]     For these reasons, 9 GCA § 19.60 provides fair notice that "enable[s] the ordinary citizen to conform his or her conduct to the law." *Shimizu*, 2017 Guam 11 ¶ 28 (quoting *Morales*, 527 U.S. at 58). Next, we address whether the terrorizing statute authorizes or even encourages arbitrary and discriminatory enforcement.

### 2.  Arbitrary and discriminatory enforcement

[24]     As we explained in *Shimizu*, "it has been recognized that the more important aspect of [the] vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" 2017 Guam 11 ¶ 36 (alteration in original) (quoting *Perez*, 1999 Guam 2 ¶ 7). This requires that the law provide "ascertainable standards of guilt" to avoid the danger of arbitrary and discriminatory enforcement of the law. *Id.* (quoting John F. Decker, *Overbreadth Outside the First Amendment*, 34 N.M. L. Rev. 53, 61 (2004)). "'The absence of an ascertainable standard of guilt in a given legal proscription gives police officers, prosecutors, and the triers of fact unlimited discretion to apply the law and, thus, there is a danger of arbitrary and discriminatory enforcement of such a law.'" *Id.* (quoting Decker, *supra* at 61).

[25]     While Tfong makes no specific arguments about how the statute provides for arbitrary and discriminatory enforcement, he does assert that it "encompasses innocent and criminal conduct alike," and then repeats his arguments on why the statute is void for vagueness. Appellant's Br. at 31. Tfong suggests that "[b]ecause a substantial amount of conduct is implicated by the broad terms of the statute, and because the statute is so imprecise, it is essentially up to law enforcement

---

lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another." *Threat*, *Black's Law Dictionary* (11th ed. 2019).

to decide which violations are worthy of punishment and which are not." *Id.* We disagree with this argument for two reasons: first, the statute prescribes minimal guidelines to govern law enforcement; and second, the statute requires that the threatened person be placed in "reasonable fear," thus providing an objective standard by which to evaluate the victim's state of mind.

[26]    As stated previously, the statute includes the requirement of an overt act, i.e., the communication of a threat. This provides law enforcement with the ability to immediately differentiate at the onset between conduct that either falls under 9 GCA § 19.60 or not. The statute's requirement that the threat have certain probable disruptive consequences, i.e., that "the natural and probable consequence of [the] threat . . . place the . . . person threatened in reasonable fear that crime will be committed," 9 GCA § 19.60(a), further restricts application of the statute, *see, e.g.*, *Porter*, 384 A.2d at 432 (explaining requirement of "reasonable fear" restricts application of Maine's terrorizing statute). Once these elements and minimum guidelines have been met, the crime has been consummated, and there is no speculation on law enforcement's part to encourage arbitrary and discriminatory enforcement.

[27]    And, as the People appropriately argue, the objective standard within the statute requiring the threatened person be placed in "reasonable fear" provides an objective standard that "ensures even-handed enforcement." Appellee's Br. at 27. The "reasonable fear" requirement in 9 GCA § 19.60 restricts application of the statute by "requiring the trier of fact to consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal sanctions." *See State v. Alvarez*, 872 P.2d 1123, 1129 (Wash. Ct. App. 1994) (holding that requirement of "reasonable fear" in malicious harassment statute provided an objective standard which limited statute's application), *aff'd*, 904 P.2d 754 (Wash. 1995); *Parker v. Commonwealth*, 485 S.E.2d 150, 153-54 (Va. Ct. App. 1997) (finding "reasonable fear" requirement in stalking

statute provides law enforcement with considerable guidance to evaluate victim's complaint); *State v. Talley*, 858 P.2d 217, 229 (Wash. 1993) (en banc) (holding that hate crimes statute with "reasonable fear" requirement gave "adequate standards to ensure proper enforcement" and was not unconstitutionally vague). Because 9 GCA § 19.60 provides fair notice of the type of conduct prohibited and offers minimal guidelines to govern law enforcement, it is not unconstitutionally vague.

## B. Sufficient Evidence Supports Tfong's Convictions

[28] Tfong appeals from the denial of his motion for judgment of acquittal, challenging the sufficiency of evidence to sustain his convictions. Appellant's Br. at 13. To analyze this claim, "we review the evidence presented at trial in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Kotto*, 2020 Guam 4 ¶ 29 (quoting *People v. Song*, 2012 Guam 21 ¶ 27); *see also People v. Camacho*, 2015 Guam 37 ¶ 9; *People v. Tennessen*, 2009 Guam 3 ¶ 14 (quoting *People v. Cruz*, 1998 Guam 18 ¶ 9), *overruled on other grounds by Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶¶ 18-19. This is a "highly deferential standard of review," *Kotto*, 2020 Guam 4 ¶ 29 (quoting *People v. Wusstig*, 2015 Guam 21 ¶ 8), and the defendant bears the burden "to establish 'that the evidence was legally insufficient to sustain a guilty verdict,'" *id.* (quoting *Song*, 2012 Guam 21 ¶ 28). Accordingly, "[the court's] review must 'give [] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *People v. Anastacio*, 2010 Guam 18 ¶ 18 (second alteration in original) (quoting *People v. Jesus*, 2009 Guam 2 ¶ 60). With these standards in mind, we address the sufficiency of evidence for each of Tfong's convictions.

### 1. Sufficient evidence supports Tfong's conviction for Terrorizing

[29]     Tfong was charged with Terrorizing (as a Third Degree Felony) in violation of 9 GCA § 19.60(a) and (b).  The People had to prove these elements beyond a reasonable doubt: (1) that Tfong did communicate a threat to John; (2) to commit a crime of violence dangerous to human life; (3) the natural and probable consequence of such a threat being to place John in reasonable fear that the crime would be committed.  *See* 9 GCA § 19.60(a).  These elements track the terrorizing statute and were provided to the jury, the exception being that the trial court included in its instructions that Tfong communicate the threat "knowingly," as charged in the indictment.[10] *See* Record on Appeal ("RA"), tab 14  at 3 (Indictment, Oct. 5, 2018); Tr. at 52 (Jury Trial, Nov. 28, 2018); *see also* 9 GCA § 19.60.

[30]     In challenging the sufficiency of evidence to support his conviction, Tfong argues that "[n]one of the witnesses established that [Tfong's] statements were communicated as an actual or imminent threat," that the statements attributed to him were "innocuous, made in a non-serious manner," and that the People did not establish that "[Tfong] had criminal intent or that his conduct was criminal."  Appellant's Br. at 16.  These arguments, however, refer to elements that the People were not expected or required to prove at trial beyond a reasonable doubt.  Title 9 GCA § 19.60 proscribes criminal conduct and does not require that a communicated threat be actual or imminent. *See supra* Part IV.A.1.a-c.  By making these arguments, Tfong fails to meet his burden in explaining "specific . . . elements [that] were not supported by sufficient evidence."  *See Jesus*, 2009 Guam 2 ¶ 62.

---

[10] Because 9 GCA § 19.60 does not expressly require a culpable mental state, 9 GCA § 4.45 acts as a catch all-provision, providing that a "culpable mental state is nonetheless required and is established only if a person acts intentionally, knowingly or recklessly."  9 GCA § 4.45 (2005).

**[31]**     Based on our review of the record, there is sufficient evidence to sustain Tfong's conviction as to the offense of terrorizing.  At trial, John testified that during the incident, "[Tfong] said he's going to use [a] machete to cut me and [Singky]," Tr. at 103 (Jury Trial, Nov. 26, 2018), that Tfong threatened to cut her belly and neck with the machete, and that he threatened to kill her.  John's testimony was largely corroborated by Singky, who testified that Tfong told John that "he want[s] to cut [John's] neck off from her body."  *Id.* at 79.  John also testified that Tfong had a machete with him under his clothing, and that he took the machete out but did not use it or touch her with it.  She explained that she felt "scared" after being threatened by Tfong.  *Id.* at 104.  These specific facts go against Tfong's argument that "[John] was not placed in fear or reasonable fear," Appellant's Br. at 17, and that "any alleged threat was not genuine," *id.* at 16.

**[32]**     Tfong also seems to suggest that John "was not placed in fear or reasonable fear" because "[Tfong] did not cut her with the machete," "touch[] her with it," or "swing it at her," even if "he took it out but he didn't use it."  Appellant's Br. at 17.  Because "reasonable fear" is an objective standard, *see supra* Part IV.A.2, any person who had just been threatened with having their neck or belly cut would have been placed in reasonable fear under the circumstances, considering John's testimony that Tfong "took [the machete] out" from under his clothing during the encounter, Tr. at 103, 116-17 (Jury Trial, Nov. 26, 2018).  In addition, Officer Castro testified that upon arriving at the scene of the crime and conducting a pat-down of Tfong, he found a machete hidden on Tfong's person.[11]  The discovery of the machete on Tfong's person provides even more credence

---

[11] In his brief, Tfong states that Officer Corpuz and Officer Castro's testimony established that John was not in fear, that she did not appear to be in reasonable fear, and that there did not appear to be an imminent threat. Appellant's Br. at 19-20.  Such assertions are contradicted by the record.  Officer Corpuz testified that when he arrived at the scene, John was screaming, yelling, and pointing at Tfong.  He also testified that "[John] may have been crying at the time," considering his observation that she had "watery eyes." Tr. at 19 (Jury Trial, Nov. 26, 2018).  Officer Castro, on the other hand, made no observations as to the immediacy of the threat or John's demeanor, other than that she "was screaming from the top of her lungs" when he arrived. *Id.* at 53.

to the argument that a person in John's situation would have been placed in reasonable fear following Tfong's threats.

[33]    While there are conflicts in the evidence between Singky's and John's versions of the event and issues of witness credibility raised during trial, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Kotto*, 2020 Guam 4 ¶ 34 (omission in original) (quoting *People v. Taisacan*, 2018 Guam 23 ¶ 17). Viewing the evidence in the light most favorable to the People, a rational trier of fact could have found each of the essential elements of the crime of Terrorizing beyond a reasonable doubt.

### 2. Sufficient evidence supports the Special Allegation for Possession or Use of a Deadly Weapon in the Commission of a Felony

[34]    Accompanying the charge of Terrorizing was a sentencing enhancement under the Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony. This enhancement states:

> (a) Whoever unlawfully possesses or uses a deadly weapon in the commission of a felony punishable under the laws of Guam shall,
>
> (1) in addition to the punishment imposed for the commission of such felony, be imprisoned for a term of not less than five (5) years nor more than twenty-five (25) years . . . .

9 GCA § 80.37(a)(1) (2005). In the indictment, the People elected to pursue this enhancement based solely on the theory that Tfong "did knowingly and unlawfully possess or use a deadly weapon, that is, *a machete*, in the commission of a felony." RA, tab 14 at 3 (Indictment).

//

//

//

//

**[35]** In his brief, Tfong argues "there was insufficient evidence of possession of a deadly weapon," no actual weapon was preserved as evidence or either presented or admitted at trial,[12] and there was insufficient evidence of use or unlawful use of the machete. Appellant's Br. at 12, 22. These arguments are misleading as John specifically testified that at the time of the threat, Tfong had a machete with him under his clothing, and that he "took it out, but he didn't use it," or touch her with it. Tr. at 103, 116-17 (Jury Trial, Nov. 26, 2018). Officer Castro also testified that upon arriving at the scene of the crime and conducting a pat-down of Tfong, he discovered on the right side of Tfong's shorts "a machete of about 25 inches long that was hidden" and "tucked in his shorts." *Id.* at 48-49, 60. This evidence is sufficient to establish that a deadly weapon was used when Tfong communicated his threat of violence to John. *See People v. Meseral*, 2014 Guam 13 ¶¶ 23-24 (finding that testimonial evidence was sufficient to prove special allegation that deadly weapon was used).

**[36]** Tfong also argues that "[e]ven if possession was proved, the possession was not unlawful." Appellant's Br. at 22. This may be true; however, the People had to prove either unlawful possession *or* use of a deadly weapon in the commission of a felony. John's testimony that, at the time of the threat, Tfong took out the machete from under his clothing, qualifies as use, even if Tfong did not touch her with it, swing it at her, or carry out his threat of cutting her neck and belly. *See Plummer v. State*, 410 S.W.3d 855, 858 (Tex. Crim. App. 2013) (explaining that "use" in sentencing enhancement concerning use of deadly weapon means weapon was "employed or utilized" in order to achieve its purpose). And because the court "is not concerned with the weight of the evidence, but with its existence or non-existence," *People v. Enriquez*, 2014 Guam 11 ¶ 22,

---

[12] Tfong's assertion that that no actual weapon was preserved as evidence or either presented or admitted at trial is error. The machete confiscated by Officer Castro from Tfong's person was presented and admitted without objection at trial. *See* Tr. at 50-51 (Jury Trial, Nov. 26, 2018).

John's testimony that Tfong took the machete out and threatened to cut her with it is sufficient to sustain the special allegation. Therefore, viewing the evidence in the light most favorable to the People, a rational trier of fact could have found the elements of the Special Allegation for Possession or Use of a Deadly Weapon in the Commission of a Felony beyond a reasonable doubt.

### 3. Sufficient evidence supports Tfong's conviction for Assault

[37] Tfong was charged with Assault (as a Misdemeanor) in violation of 9 GCA § 19.30(a)(1) and (e). For this offense, the People had to prove beyond a reasonable doubt that Tfong did recklessly cause or attempt to cause bodily injury to John. These elements track the assault statute and were provided to the jury. *See* 9 GCA § 19.30(a)(1), (e) (2005); Tr. at 49, 53 (Jury Trial, Nov. 28, 2018).

[38] In challenging his conviction, Tfong argues that "[n]o evidence was presented at trial establishing that [Tfong] recklessly caused or attempted to cause bodily injury to [John]," that "[John's] testimony established that there was no actual or imminent threat to [her]," and that John "was not placed in fear or reasonable fear." Appellant's Br. at 26. On the latter two assertions, Tfong refers to elements in the assault statute that the People were not expected or required to prove at trial beyond a reasonable doubt. By making these arguments, Tfong again fails to meet his burden in explaining specific elements for the offense of Assault that were not supported by sufficient evidence.

[39] Tfong's assertion that "[n]o evidence was presented at trial establishing that [Tfong] recklessly caused or attempted to cause bodily injury to [John]" is belied by the record. Appellant's Br. at 26. John testified that Tfong threatened to cut her belly and neck with a machete, which he took out from under his clothing. John also testified that she informed law enforcement that Tfong kicked her in the face. Considering this testimony, a rational trier of fact could have found each of the essential elements for the crime of Assault beyond a reasonable doubt.

## V.  CONCLUSION

**[40]**     Because the terrorizing statute is not unconstitutionally vague and sufficient evidence supports each of Tfong's convictions, we **AFFIRM** the judgment of conviction.


/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
F. PHILIP CARBULLIDO
Chief Justice