

Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee

**v.**

## JORDAN SAUL RACHULAP,
Defendant-Appellant.

Supreme Court Case No. CRA21-013
Superior Court Case No. CF0322-19

## OPINION

## Cite as: 2022 Guam 9

Appeal from the Superior Court of Guam
Argued and submitted on May 11, 2022
Yigo, Guam

Appearing for Defendant-Appellant:
William Benjamin Pole, *Esq.*
Law Offices of Gumataotao & Pole, P.C.
456 W. O'Brien Dr., Ste. 104
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Marianne Woloschuk, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr.
Tamuning, GU 96913



**E-Received**
12/9/2022 1:55:18 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, J.:**

[1]     Defendant-Appellant Jordan Saul Rachulap ("Jordan") appeals from a criminal judgment of conviction on two counts of Criminal Mischief (as a Third Degree Felony), two counts of Terrorizing (as a Third Degree Felony), and four Special Allegations of Possession or Use of a Deadly Weapon in the Commission of a Felony under 9 GCA § 80.37. On appeal, Jordan challenges the sufficiency of the evidence supporting each of his eight convictions and alleges prosecutorial misconduct. We affirm in part, reverse in part, and remand to the Superior Court for further proceedings not inconsistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     In June 2019, Jordan and his brother, Emmanuel Reselap ("Emmanuel"), were arrested on suspicion of attacking cars near the University of Guam. Jordan was indicted on seven counts of Criminal Mischief (as a Third Degree Felony), seven counts of Terrorizing (as a Third Degree Felony), one count of Aggravated Assault (as a Third Degree Felony), one count of Assault (as a Misdemeanor), and fifteen Special Allegations of Possession or Use of a Deadly Weapon in the Commission of a Felony under 9 GCA § 80.37 (hereafter, "Deadly Weapon allegation"). Emmanuel was indicted on similar and additional charges. Emmanuel and Jordan were tried together in August 2019.

[3]     The following evidence was adduced at trial through the testimony of twenty witnesses, authenticated photographs, and security camera footage. On the morning of the incident, Jordan, Emmanuel, and two cousins (E.R. and T.R.) went to a beach in Mangilao and consumed alcohol. The group then returned to the Mangilao apartment where E.R. and T.R. were staying. At the

apartment, Emmanuel physically assaulted his girlfriend, which led to a broader altercation between the family members present. Emmanuel and E.R. fought, resulting in Emmanuel striking E.R. with a machete. E.R. was transported from the apartment for medical attention. After this altercation, Emmanuel, Jordan, and T.R. began to attack cars stopped along the road outside.

[4]     As relevant to this appeal, Plaintiff-Appellee People of Guam ("People") presented evidence regarding Jordan's actions against three victims: Aurora Pastrana, Dean Sparks, and Dr. Judith Guthertz. Aurora Pastrana was a visitor to Guam from Puerto Rico. Pastrana did not testify at trial, but her story was conveyed through Guam Police Department ("GPD") Officer Michael A. Ramos and through Simichy Edmund, manager of Andy's Rent-a-Car. Officer Ramos testified that he met with Pastrana, and she informed him that her rented car—a blue Mazda—had been damaged by members of the group. Simichy Edmund testified that Pastrana had rented the blue Mazda from his company. Edmund authenticated photographs of the blue Mazda, which showed damage to the vehicle's exterior, and confirmed this damage was not present before Pastrana rented the vehicle. The People presented video footage which showed portions of the incident. The video footage appeared to show a man wearing a red shirt attacking a blue Mazda car with a machete. The People showed the video to Mary Jane Reselap, Jordan's cousin, and she identified the man in the red shirt as Jordan.

[5]     Dean Sparks, a resident of Guam, testified that he had been riding his bicycle by the scene of the incident when someone threw rocks at him. Sparks then testified that a male individual approached him and hit him in the leg with a machete, which knocked him off his bike and caused a "superficial skin cut." Transcript ("Tr.") at 70-71 (Jury Trial, Aug. 27, 2019). The assailant stood over Sparks in a menacing manner. Witness Frank C. Aguon testified that he saw this incident occur, thought Sparks "looked like he was scared" by the assailant standing over him, and

felt worried for Sparks's well-being. Tr. at 183 (Jury Trial, Aug. 26, 2019). T.R., the third participant in the incident, testified that he and Jordan perpetrated the attack on Sparks and that Jordan was the individual who hit Sparks with the machete.

[6]      Dr. Judith Guthertz, a professor at the University of Guam, testified that she was inside her vehicle—a "little Fiat car" with a "soft top"—when individuals attacked the vehicle with rocks and a machete. *Id.* at 119-20. Dr. Guthertz testified that the individuals significantly damaged the vehicle's exterior, and she then authenticated several photographs showing the damage. Dr. Guthertz also testified that she was "stunned" and "terrified" during the attack. *Id.* at 119. Dr. Guthertz expressed that she had worried "eventually [the assailants] were going to try to kill [her.]" *Id.* at 130.

[7]      At the close of evidence, the People amended the Indictment, which resulted in fewer base charges and Special Allegations against Jordan. Jordan then orally moved for a judgment of acquittal on all remaining charges, and this motion was partially granted, leaving seven base charges and Special Allegations for the jury's consideration. The jury returned guilty verdicts on two counts of Terrorizing (as a Third Degree Felony) and two counts of Criminal Mischief (as a Third Degree Felony) with their accompanying Special Allegations. Jordan was later sentenced to twelve years' imprisonment for his offenses.

[8]      After the Superior Court entered its Judgment, Jordan filed two Notices of Appeal, which resulted in Supreme Court Case No. CRA20-005. But both of Jordan's initial Notices of Appeal were untimely under Guam Rule of Appellate Procedure 4(b)(1)(A)(i), so this court dismissed CRA20-005. Jordan then sought relief in the Superior Court through a habeas corpus petition, which was granted. The Superior Court re-entered its Judgment on the docket, giving Jordan a

second opportunity to timely file his appeal. Jordan availed himself of this opportunity and filed this appeal.

## II. JURISDICTION

[9]    This court has jurisdiction over an appeal from a final judgment of conviction under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-214 (2022)); 7 GCA §§ 3107 and 3108(a) (2005); and 8 GCA § 130.15(a) (2005).

## III. STANDARD OF REVIEW

[10]    "Where a defendant raise[d] the issue of sufficiency of the evidence by a motion for judgment of acquittal, we review the trial court's denial of the motion *de novo*." *People v. Morales*, 2022 Guam 1 ¶ 13 (alteration in original) (quoting *People v. Song*, 2021 Guam 14 ¶ 16). And where a sufficiency of the evidence issue requires statutory interpretation, we perform that statutory interpretation *de novo*. *People v. Reselap*, 2022 Guam 2 ¶ 14.

[11]    When a defendant fails to object to alleged prosecutorial misconduct, we review the alleged misconduct only for plain error. *E.g.*, *People v. Reyes*, 2020 Guam 33 ¶ 16.

## IV. ANALYSIS

### A. Sufficient Evidence Exists to Sustain All Four Base Convictions

[12]    Jordan first argues the evidence was insufficient to sustain any of his four base convictions: two counts of Criminal Mischief and two counts of Terrorizing. Our review of evidentiary sufficiency is *de novo*, but it is "highly deferential" to the findings of the trier of fact. *Song*, 2021 Guam 14 ¶ 18. "[W]e review the evidence in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt," affording to the People "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *People v. Wia*, 2020 Guam 17 ¶ 35 (quoting

*People v. Song*, 2012 Guam 21 ¶ 28).   We measure only the "existence or non-existence of evidence, not its weight."  *People v. Martin*, 2018 Guam 7 ¶ 23 (quoting *Song*, 2012 Guam 21 ¶ 29).

### 1.  Charge Eight, Count One: Criminal Mischief relating to the blue Mazda

[13]     A defendant commits Criminal Mischief, as charged, if he "intentionally damages the motor vehicle of another."  9 GCA § 34.50(d) (as amended by Guam Pub. L. 35-134:5 (Dec. 29, 2020)).  Jordan focuses his challenge on three sub-issues: evidence of identity, evidence of intent, and whether Guam's Criminal Mischief statute requires that the victim of the offense also be the registered owner of the vehicle.

[14]     Jordan first argues the evidence was insufficient to prove he was the perpetrator of this attack, asserting that "no one saw Jordan cause damage to this vehicle, no one was able to report that he caused damage to this vehicle, and to complicate matters the Mazda in this count looks like the Mazda driven by another victim."  Appellant's Br. at 26-27 (Jan. 27, 2022).  These assertions appear to be true, but each goes to the weight—not the existence—of the evidence.  *Cf. People v. Wusstig*, 2015 Guam 21 ¶¶ 10-11 (distinguishing evidentiary weight versus evidentiary existence).  Regardless of the evidentiary deficiencies alleged by Jordan, the jury here received video footage showing a man in a red shirt damaging vehicles, including a blue Mazda, with a machete.  Jordan's cousin, Mary Jane Reselap, identified Jordan as the man in the red shirt with the machete.  And GPD Officer Ramos and Simichy Edmund each authenticated photographs of Pastrana's blue Mazda with significant exterior damage not inconsistent with what could be caused by a machete.  Drawing all inferences in favor of the People, a reasonable jury could have found the individual in the video with the machete was Jordan, and the blue Mazda in the video was Pastrana's.  From these findings, a reasonable jury therefore could have concluded that Jordan was the perpetrator

of the attack even absent direct identification testimony. *See People v. Cepeda*, 2021 Guam 9 ¶ 29 (rejecting argument that evidence was insufficient because of lack of direct evidence or eyewitness accounts of crimes while in progress, and holding that circumstantial evidence alone is sufficient to support a conviction). The evidence of identification was sufficient.

[15] Jordan next argues the evidence was insufficient to show that he intended to damage Pastrana's vehicle, asserting, "There is no indication that in Jordan's intoxicated and excited state that any alleged actions of his could have been shown to be done with intent to cause damage to any vehicle or person." Appellant's Br. at 26. It is true the evidence suggests Jordan consumed alcohol on the day of the incident; there was testimony he was drinking earlier in the day and testimony from the arresting officer that Jordan seemed intoxicated at the time of arrest.

[16] Evidence of intoxication may negate the *mens rea* of a crime by showing the defendant was too intoxicated to form the specific intent necessary for certain offenses. *See, e.g.*, *People v. Nathan*, 2018 Guam 13 ¶¶ 19-22. But "the mere fact a defendant may have been drinking prior to the commission of a crime does not establish intoxication." *Reyes*, 2020 Guam 33 ¶ 66 (quoting *Nathan*, 2018 Guam 13 ¶ 21); *see also State v. Cameron*, 514 A.2d 1302, 1308-09 (N.J. 1986) (holding that intoxication must be of an extremely high level to have caused "prostration of faculties" of a defendant to qualify as a defense). Whether a defendant was so intoxicated that he could not form the specific intent necessary to commit an offense is a question of fact, and resolution of that question is properly committed to the trier of fact. *See Saunders v. State*, 10 So. 3d 53, 100 (Ala. Crim. App. 2007); *Brooks v. State*, 395 A.2d 1224, 1228 (Md. Ct. Spec. App. 1979). Though a reasonable jury could have found that Jordan was too intoxicated to form specific intent, nothing in the record *compelled* that finding. A reasonable jury instead could have found— and evidently did find—that Jordan was no longer intoxicated or was not intoxicated to the level

where his faculties were compromised at the time of the attacks. Nothing in the record makes the jury's factual finding on this issue unreasonable; thus, we reject Jordan's premise that his alleged intoxication necessarily negated his intent to cause the vehicle damage.

[17]     Jordan next argues his conviction for Criminal Mischief cannot stand because Pastrana did not own the blue Mazda. Jordan appears to argue that the victim's ownership of the vehicle is an essential element of Criminal Mischief on a motor vehicle. *See* Appellant's Br. at 25-26. A defendant commits Criminal Mischief, as charged, if he or she "intentionally damages *the motor vehicle of another*." 9 GCA § 34.50(d) (emphasis added). The question is whether the statutory phrase "the motor vehicle of another" must mean "a motor vehicle owned by the victim."

[18]     "In cases involving statutory construction, the plain language of a statute must be the starting point." *Pangelinan v. Gutierrez*, 2000 Guam 11 ¶ 23. Title 9 GCA § 34.50(d) does not specify who must own the vehicle, only that the vehicle must be "of another." We construe the phrase "of another" by its ordinary, commonsense meaning: its purpose is to exclude from criminal liability a defendant who intentionally damages his or her own property. Thus, when prosecuting a defendant for Criminal Mischief on a motor vehicle, the People need only prove that the vehicle belongs to "another," *i.e.*, to someone other than the defendant. *Cf. People v. Tennessen*, 2009 Guam 3 ¶ 24 (in the context of larceny or theft statutes, "the People need only prove that someone other than the defendant has some possessory interest in the stolen property. The person need not own the stolen items."), *overruled on other grounds by Barrett-Anderson v. Camacho*, 2018 Guam 20. There is no requirement in 9 GCA § 34.50(d) that the victim own the damaged vehicle. The only statutory requirement is that the motor vehicle be "of another," and this prong of the statute is met where the People adduce evidence that the defendant did not own that vehicle. Here, the undisputed evidence shows that Andy's Rent-a-Car—not Jordan—owned the blue Mazda operated

by Pastrana. Thus, sufficient evidence showed that this blue Mazda was "the motor vehicle of another"; no more proof of ownership is required by 9 GCA § 34.50(d).

[19] Jordan argues that vehicle ownership was an essential element *here* because of an anomaly in the jury instructions. Jordan notes, correctly, that Jury Instruction 7AA, "Essential Elements of Criminal Mischief," instructed the jury it must find that Jordan "did intentionally . . . damage the motor vehicle *of Aurora Pastrana*." (emphasis added). *See* Tr. at 43 (Jury Trial, Sept. 30, 2019); Appellant's Br. at 25-26. Jordan argues that the language of this instruction creates a special burden of proof that Pastrana owned the vehicle. We disagree; we do not construe the word "of" as narrowly as Jordan does. While the instruction does demand a nexus between Pastrana and the vehicle, we hold this nexus can be established through proof of the victim's lawful use and possession of a vehicle. *See, e.g., State v. Russell*, 585 N.E.2d 995, 997-98 (Ohio Ct. App. 1990); *People v. Schliesser*, 671 P.2d 993, 995 (Colo. App. 1983); *accord Tennessen*, 2009 Guam 3 ¶ 24. There was evidence from Simichy Edmund, manager of Andy's Rent-a-Car, that Pastrana was a lawful user and possessor of the vehicle when the damage occurred. Tr. at 198 (Jury Trial, Aug. 27, 2019). This evidence of possession satisfies the "*of Aurora Pastrana*" portion of Jury Instruction 7AA. Thus, as 9 GCA § 34.50(d) does not require the named victim to be the owner of the damaged vehicle, and Jury Instruction 7AA did not specially require Aurora Pastrana to own the damaged vehicle, the evidence was sufficient to sustain this conviction.

**2. Charge Eight, Count Three: Criminal Mischief relating to Dr. Guthertz's vehicle**

[20] Jordan next argues the evidence was insufficient to sustain the conviction of Criminal Mischief relating to Dr. Guthertz's vehicle for two reasons: first, because there was no evidence he *intended* to commit Criminal Mischief; and second, because there was no evidence presented of "Jordan having either a machete or rock." Appellant's Br. at 28, 29.

**[21]**     Jordan first argues there was no evidence he intended to damage Dr. Guthertz's vehicle, asserting that "[a]ny threat would have to [have] been inferred and no showing of intent other than presence was provided." *Id.* at 27.   Jordan's premise that intent "would have to [have] been inferred" describes an unproblematic situation.  This court has repeatedly held that circumstantial evidence can sustain a conviction.  *See, e.g.*, *People v. Jesus*, 2009 Guam 2 ¶ 62 ("[E]vidence sufficient to support a guilty verdict may be entirely circumstantial . . . ." (quoting *United States v. Boskic*, 545 F.3d 69, 85 (1st Cir. 2008))); *People v. McKinney*, 2016 Guam 3 ¶ 22 (same); *Song*, 2012 Guam 21 ¶ 29.  And appellate courts regularly affirm that a defendant's intent may be inferred from the circumstances of the offense.  *See, e.g.*, *Jesus*, 2009 Guam 2 ¶ 64; *McKinney*, 2016 Guam 3 ¶ 21; *State v. Hoeffel*, 1991-NMCA-070, ¶ 14, 112 N.M. 358, 815 P.2d 654 ("Intent can be proved by circumstantial evidence."); *Rose v. Touchette*, 2021 VT 77, ¶ 30, 264 A.3d 861 ("Generally, intent is a factual determination; in the absence of direct evidence, intent can be proved by circumstantial evidence.").  Drawing all inferences in favor of the People, a reasonable jury could have inferred that Jordan's act of striking a car with a machete evinced an intent to damage that car.  *See People v. Bryant*, 787 N.Y.S.2d 540, 541-42 (App. Div. 2004) (in context of criminal mischief, "[i]ntent can be inferred from the act itself" (quoting *People v. Douglas*, 737 N.Y.S.2d 545, 545 (App. Div. 2002))); *Vines v. United States*, 70 A.3d 1170, 1180 (D.C. 2013) ("[A] finder of fact [may] infer the general intent to commit a crime from reckless conduct."); *see also People v. Demapan*, 2004 Guam 24 ¶ 25 (a "jury may infer specific intent from the circumstances" of the crime).  Thus, there was sufficient circumstantial evidence on which the jury could conclude that Jordan intended to damage Dr. Guthertz's vehicle when he struck it with a machete.

**[22]** Jordan also claims there was "no evidence presented that Jordan had either a machete or a rock based upon the testimony of Dr. Guthertz." Appellant's Br. at 28. We read the record differently. First, there was direct evidence that Jordan possessed a machete on that day—T.R., Jordan's cousin and co-assailant, testified that Jordan possessed the machete during the incident with Dean Sparks. *See* Tr. at 221 (Jury Trial, Aug. 26, 2019). And while Dr. Guthertz did not directly testify that *Jordan* wielded a machete against her vehicle, she testified that the person who attacked her car with a machete was wearing a red shirt. *Id.* at 126. Video footage showed a man in a red shirt using a machete to attack cars, and witness Mary Jane Reselap identified the man in the red shirt as Jordan. *See* Tr. at 18-19 (Jury Trial, Aug. 27, 2019). This is sufficient evidence from which a reasonable jury could have inferred that Jordan was one of the men who attacked Dr. Guthertz's vehicle with a machete. The evidence was sufficient to sustain this conviction.

### 3. Charge Seven, Count Two: Terrorizing relating to Dr. Guthertz

**[23]** Jordan next argues the evidence was insufficient to sustain his conviction for Terrorizing relating to Dr. Guthertz. A defendant is guilty of Terrorizing:

> if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable consequence of such a threat, is to place the person to whom the threat is communicated or the person threatened in reasonable fear that crime will be committed.

9 GCA § 19.60(a) (2005). Jordan claims insufficiency here because there was no evidence that he "knowingly communicated a threat dangerous to human life." Appellant's Br. at 28. Jordan further argues that his "actions alleged if true would have been reckless," rather than "knowing," which in his view means the proper charge was misdemeanor Assault under 9 GCA § 19.30(a)(3) rather than felony Terrorizing under 9 GCA § 19.60. *Id.* at 29.

**[24]**     Guam's Terrorizing statute does not specify that the communication of the threat must be made "knowingly"; the statutory language does not prescribe a specific *mens rea* for the communication element. *See* 9 GCA § 19.60; *People v. Tfong*, 2021 Guam 13 ¶ 19 (noting the lack of express *mens rea* language in 9 GCA § 19.60). As Jordan notes, however, the jury instruction here specifically charged the jury with finding he "knowingly communicated a threat" to Dr. Guthertz. Tr. at 24 (Jury Trial, Aug. 30, 2019). The instruction applied the same *mens rea* that was included in the indictment for this charge. *See* RA, tab 97 at 7 (Am. Indictment, Aug. 30, 2019) ("in that he did knowingly communicate a threat to another person"). This instruction was not erroneous because it did not dilute the People's burden of proof on this element. The lack of express *mens rea* language in 9 GCA § 19.60 may bring it within the prescription of 9 GCA § 4.40, which provides that "if the definition of a crime does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established only if a person acts intentionally, knowingly or recklessly." *See* 9 GCA § 4.40 (2005); *Tfong*, 2021 Guam 13 ¶ 19.[1] Under 9 GCA § 4.35(b), "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts intentionally or knowingly." 9 GCA § 4.35(b) (2005). Thus, the proof the People sought to present—that Jordan acted "knowingly"—would prove he acted "recklessly" as well. We therefore proceed based on the trial court's instruction: whether there was sufficient evidence that Jordan *knowingly* communicated a threat.

---

[1] In *People v. Tfong*, we declined to decide whether the catch-all provision of 9 GCA § 4.40 applies or whether no culpable mental state need be pleaded to convict under 9 GCA § 19.60, recognizing that in any event, "the lack of a *mens rea* does not render the terrorizing statute unconstitutionally vague because 9 GCA § 4.40 provides a mechanism in those situations." 2021 Guam 13 ¶ 21. Later in the opinion, when reviewing the sufficiency of the evidence, we noted the jury instructions and indictment included the element of knowingly communicating a threat and recognized this as the trial court's application of the catch-all provision of 9 GCA § 4.40. *See id.* ¶¶ 21 n.8, 29 & n.10.

For future reference, we note a clerical error in footnote 10 of *Tfong*. The footnote erroneously cites to 9 GCA § 4.45; however, the quoted language is from 9 GCA § 4.40.

**[25]** Under Guam law:

> A person acts knowingly, or with knowledge, with respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

9 GCA § 4.30(b) (2005). The question is thus whether a reasonable jury could have inferred that Jordan was aware of the nature of his conduct and was aware that this conduct was practically certain to cause the result of Terrorizing.

**[26]** Terrorizing is measured under an objective standard. "[T]he recipient of the threat need not be placed in actual fear," *People v. Camacho*, 2015 Guam 37 ¶ 26, and the threat need not be "imminent or even actual," *Tfong*, 2021 Guam 13 ¶ 22. All that is required is that the "natural and probable consequence" of the threatening communication is that the recipient will be placed "in reasonable fear that crime will be committed." *See id.* (quoting 9 GCA § 19.60(a)). In determining whether the natural and probable consequence of a threat was to create reasonable fear, we have considered "the substance and context of the threat." *See Camacho*, 2015 Guam 37 ¶ 27.

**[27]** A reasonable jury could conclude that the natural and probable consequence of smashing an occupied vehicle with a machete is that the vehicle's occupant would reasonably fear death or serious bodily injury. And while the victim's "actual fear" is not an element of the crime, the jury heard testimony from Dr. Guthertz that she was "stunned" and "terrified," that she perceived the defendants "would be able to use those machetes to get through the top [of her vehicle]," that the individuals had "terror in their faces" and appeared to her to have "hate and concern or an interest to hurt others," and that she believed "eventually [her attackers] were going to try to kill [her.]" Tr. at 119-23, 130 (Jury Trial, Aug. 26, 2019). The jury also saw photographs of, and heard testimony about, the extensive damage caused to Dr. Guthertz's vehicle because of this attack. A

reasonable jury could infer from the attack that Jordan knew the natural and probable consequence of his actions was to place Dr. Guthertz in reasonable fear that he would commit a crime of violence dangerous to human life. Thus, there was sufficient evidence to sustain the Terrorizing conviction, as instructed.

[28]   Jordan also argues that the proper charge for his act was misdemeanor Assault under 9 GCA § 19.30(a)(3), rather than felony Terrorizing under 9 GCA § 19.60, because the evidence showed he acted only recklessly, not knowingly. Appellant's Br. at 29; Reply Br. at 3-5 (Mar. 28, 2022). Perhaps a misdemeanor Assault charge could have been viable here, but we disagree with Jordan's implication that the existence of this other theory of liability rendered Terrorizing an *improper* charge. Where the evidence may suggest the commission of more than one offense, the People may prosecute the defendant for each such offense. 9 GCA § 1.22 (2005); *see also People v. Afaisen*, 2016 Guam 31 ¶ 32. Thus, the possibility of a viable Assault charge did not preclude the People from pursuing a Terrorizing charge instead of, or together with, the Assault charge. And here, the People proved their Terrorizing charge—including the higher "knowingly" *mens rea*—and obtained that conviction through sufficient evidence. Because the Terrorizing conviction was both properly charged and properly obtained, we need not analyze further the merits of a hypothetical Assault offense.

### 4.  Charge Seven, Count Three: Terrorizing relating to Sparks

[29]   Jordan next argues the evidence showing he committed Terrorizing against Dean Sparks was insufficient because Sparks misidentified Emmanuel as his attacker, and because the evidence did not show that Jordan "knowingly" made a "threat dangerous to human life." We disagree.

[30]   Jordan first argues there was insufficient evidence of identity because Sparks visually identified Emmanuel, not Jordan, as the attacker. Sparks testified that he "remember[ed] his

[attacker's] face" and then pointed to Emmanuel as the attacker in the courtroom. Tr. at 72 (Jury Trial, Aug. 27, 2019). Yet T.R. also explicitly testified that Jordan was the person who attacked Sparks. Tr. at 221 (Jury Trial, Aug. 26, 2019). T.R. testified that he participated in the attack and that he "pulled [Sparks] off the bike." *Id.* T.R. then testified that "Jordan hit [Sparks] with the machete." *Id.* And T.R. also clarified that Emmanuel was not part of this fight—he testified that "[i]t was just me and Jordan" who attacked Sparks. *Id.* at 222. There was conflicting testimony as to who attacked Sparks. Conflicting testimony goes to the weight, not the existence, of evidence, and in instances where there is conflicting testimony, it is the trier of fact who must decide which testimony was more credible. *See People v. Finik*, 2017 Guam 21 ¶ 22 (collecting cases). A reasonable jury could have given more weight to T.R.'s identification of Jordan as the perpetrator than to Sparks's identification of Emmanuel as the perpetrator. T.R. is Jordan's cousin and knows him well; Sparks did not know these people before this brief incident and was asked to identify Jordan based on a short memory he formed several months earlier. A reasonable jury could have resolved, and presumably did resolve, any question of identification in favor of T.R.'s testimony; thus, there was sufficient evidence to support the jury's finding against Jordan's identification challenge.

[31]    Jordan next argues there was insufficient evidence he "knowingly communicated" a threat dangerous to human life because he did not verbally communicate a threat to Sparks. It is true there was no evidence of a verbal communication, but in the context of Terrorizing, we have held that "[n]onverbal acts satisfy the communication requirement if a threat can be gleaned from context." *People v. Robert*, 2019 Guam 2 ¶ 10 (quoting *Camacho*, 2015 Guam 37 ¶ 25). Thus, "a threat may be made non-verbally by an expression of conduct or gestures." *Id.* More recently, we

also reaffirmed this holding from *Robert* in Emmanuel's own appeal against his Terrorizing convictions. *See People v. Reselap*, 2022 Guam 2 ¶¶ 42-46. In *Robert*, we held that the defendant:

> communicated a threat by running toward [the victim], who was in his vehicle, while brandishing a machete and striking [the victim's] vehicle several times. Importantly, he struck the tailgate of the vehicle twice while leaving the vehicle damaged with a display of dents and slash marks. He further communicated a threat by striking the driver's side of the vehicle with the machete. This conduct communicated a threat to commit a crime of violence dangerous to human life.

*Robert*, 2019 Guam 2 ¶ 11. Likewise, in *Reselap*, we reasoned that a reasonable jury could "perceive hitting a vehicle, slowly walking towards a vehicle while swinging a machete in the air, and staring at the victim while wielding a machete as non-verbal communication of intent to commit a crime of violence against a person." *Reselap*, 2022 Guam 2 ¶ 50.

[32]    Sparks testified that as he was riding his bicycle by the crime scene, an individual came up and struck him in the leg with a machete. Although the machete was dull, the impact was enough to knock Sparks off his bike. Sparks's testimony was partially corroborated by another witness, Frank C. Aguon, who testified that he saw this altercation from a distance. Aguon testified that he saw the perpetrators "harassing a guy on a bicycle," Tr. at 182 (Jury Trial, Aug. 26, 2019), that he saw Sparks "on the ground," *id.* at 184, and that it was "like [the perpetrators] knocked him over. They're on him pretty much," *id.* From this evidence, a reasonable jury could have found that Jordan knocked Sparks off his bike to the ground and stood above him with a machete. A reasonable jury could have then found this act to be a non-verbal communication of a threat by Jordan to commit a further violent offense. A reasonable jury likewise could have found that Jordan acted knowingly, reasoning that Jordan knew the "natural and probable consequence" of his actions was to place Sparks in reasonable fear. *See supra* Part IV(A)(3). Thus, there was sufficient evidence for the jury to conclude that Jordan's communication, though non-verbal, was a "knowing communication" of a threat.

[33]     We therefore reject all of Jordan's challenges to the sufficiency of evidence supporting his four base convictions.

**B.  The Evidence Was Sufficient to Sustain Three of the Four Special Allegations**

[34]     Jordan next argues the evidence was insufficient to sustain any of his four convictions for Special Allegations of Possession or Use of a Deadly Weapon in the Commission of a Felony under 9 GCA § 80.37(a).  This statute creates a sentence enhancement when a defendant "unlawfully possesses or uses a deadly weapon in the commission of a felony punishable under the laws of Guam."  9 GCA § 80.37(a) (2005).  Under Guam law, a deadly weapon is "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to the defendant to be capable of producing death or serious bodily injury."  9 GCA § 16.10(d) (2005).

[35]     There was evidence that Jordan used and possessed a machete in the commission of the four crimes above.  Our inquiry is whether Jordan's machete qualifies as a "deadly weapon" under Guam law during each offense.  We begin our analysis with the last clause of 9 GCA § 16.10(d): to be considered a "deadly weapon," an object must be known to the defendant to be "capable of producing death or serious bodily injury."  There was significant evidence on which the jury could infer that Jordan's weapon was capable of causing death or serious bodily injury to a person.  The jury heard testimony from Dr. Guthertz about the damage that the machete caused to her vehicle and saw photographs of machete damage to several vehicles.  The jury also heard testimony from Sparks that Jordan's use of the machete was forceful enough to knock Sparks off his bike and injure Sparks's leg.  And the jury heard testimony from E.R. that, before the vehicle attacks, Emmanuel struck E.R. with presumably the same machete and caused a "major laceration" that

sent E.R. to the hospital. Based on this evidence, a reasonable jury could infer that the machete was capable of causing death or serious bodily injury when directed against a person.[2]

[36]     Yet for an object to qualify as a deadly weapon under Guam law, the jury must also find that the weapon is known to the defendant to be capable of causing death or serious bodily injury *in the manner it is used or is intended to be used*. 9 GCA § 16.10(d). Thus, it is not sufficient that an object be theoretically capable of causing death or serious bodily injury—the object must actually be used, or must be intended to be used, in a manner that could cause those results.

### 1.  Special Allegations attached to the Terrorizing convictions

[37]     We have no trouble upholding the jury's findings regarding the Deadly Weapon allegations attached to the Terrorizing convictions: the jury could have found that Jordan used or intended to use the machete in a manner he knew to be capable of causing death or serious bodily injury in these instances. The record shows that Jordan actually struck Sparks with the machete and then stood above him wielding the machete, non-verbally threatening further usage. The record also shows that Jordan wielded the machete against Dr. Guthertz's vehicle while she was still inside it, causing serious damage to the vehicle's exterior and placing Dr. Guthertz in reasonable fear that Jordan might attack her directly. In both incidents, a reasonable jury could have concluded both that the machete was capable of producing death or serious bodily injury to the victims, and that Jordan used or intended to use the machete in such a manner to create a significant risk of death or serious bodily injury. The evidence was therefore sufficient to sustain the Deadly Weapon convictions attached to Charge Seven, Counts Two and Three.

---

[2] This follows our holdings in several recent cases in which we affirmed jury findings that a machete was used as a "deadly weapon" under Guam law. *See People v. Robert*, 2019 Guam 2 ¶ 11; *People v. Reselap*, 2022 Guam 2 ¶¶ 34-35; *People v. Nathan*, 2018 Guam 13 ¶¶ 5, 7.

## 2. Special Allegations attached to the Criminal Mischief convictions

[38]    We distinguish the Special Allegations attached to the two Criminal Mischief convictions based on the evidence, or lack thereof. We agree that the Deadly Weapon allegation properly attached to the conviction for Criminal Mischief against Dr. Guthertz: Charge Eight, Count Three. The same activity that supported the Special Allegation attached to the Terrorizing conviction concerning Dr. Guthertz also supported the Special Allegation attached to the Criminal Mischief conviction concerning her. The jury reasonably concluded, based on Dr. Guthertz's testimony about her "soft-top" vehicle and the extent of the damage caused, that Jordan's act of attacking her vehicle with the machete was capable of causing death or serious bodily injury to Dr. Guthertz. Thus, the evidence was sufficient to prove that Jordan used or possessed a deadly weapon in the commission of Criminal Mischief, Charge Eight, Count Three.[3]

[39]    We agree with Jordan, however, that the evidence was insufficient to sustain the Deadly Weapon allegation attached to Criminal Mischief, Charge Eight, Count One. As above, the Deadly Weapon allegation properly attaches when the defendant "possesses or uses a deadly weapon," 9 GCA § 80.37, and an object is considered a deadly weapon when "in the manner it is used or is intended to be used," it is known to the defendant to be "capable of producing death or serious bodily injury." 9 GCA § 16.10(d). Thus, for a Deadly Weapon allegation to properly attach to a Criminal Mischief conviction, the defendant must use or intend to use the object in a manner he knows could pose a risk of "death or serious bodily injury" to the victim—and to obtain a proper

---

[3] We also reject Jordan's argument that a Deadly Weapon allegation can never attach to the crime of Criminal Mischief because a car cannot suffer "death or serious bodily injury." As we held in *Reselap*—involving this same criminal transaction—a Deadly Weapon allegation can properly attach when the vehicle is occupied. The relevant inquiry is not whether the *vehicle* is placed at risk of death or serious bodily injury, but whether the *occupant* of the vehicle was placed at risk by the damaging of the vehicle. *See* 2022 Guam 2 ¶¶ 34-41.

conviction on this allegation, the People must produce evidence on which the jury could base that finding.

[40]     The evidence was insufficient to show that Pastrana faced a risk of death or serious bodily injury from Jordan's actions.  Pastrana did not testify.  Neither GPD Officer Ramos nor Simichy Edmund testified that Pastrana either objectively was, or subjectively felt she was, at risk of injury from the attack.  And while there was video evidence on which a reasonable jury could conclude that Jordan damaged Pastrana's car, *see supra* Part IV(A)(1), that video does not show whether Pastrana was inside her vehicle or otherwise in some position of danger relative to the attack on her vehicle.  The jury could not have convicted Jordan on this Special Allegation except by merely assuming that because her car was damaged, Pastrana was also placed at risk of serious bodily injury or death.  Yet without *some* evidence to support that premise, "the evidence merely raises a suspicion that the accused is guilty."  *People v. Quintanilla*, 2020 Guam 8 ¶ 11 (quoting *Song*, 2012 Guam 21 ¶ 29).  Without more, the evidence was insufficient to sustain the Deadly Weapon allegation attached to Charge Eight, Count One.  We therefore reverse this conviction.

## C.  The Alleged Prosecutorial Misconduct Was Not Plainly Erroneous

[41]     Jordan also argues that statements made by the prosecutor during his closing arguments were misconduct amounting to reversible error.[4]  Jordan's trial counsel did not object to the now-challenged statements, so our review is for plain error.  *Reyes*, 2020 Guam 33 ¶ 16.  "Under plain error review, [the] court 'will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to

---

[4] Jordan argues primarily under common law prosecutorial misconduct theories, but in the headers of his briefing, he also alludes to possible constitutional violations.  *See* Appellant's Br. at 34 (framing his argument in part as a Fifth Amendment claim).  But Jordan does not advance any arguments directly addressing the Fifth Amendment in the body of his briefing.  In failing to advance any specific argument in support of this claim, we consider the issue abandoned.  *Cf. People v. Blas*, 2015 Guam 30 ¶ 28; *see also* Guam R. App. P. 13(a)(9)(A).

prevent a miscarriage of justice or to maintain the integrity of the judicial process.'" *Id.* (alteration in original) (quoting *Nathan*, 2018 Guam 13 ¶ 9).

[42]     Jordan first draws the court's attention to the following portion of the prosecutor's closing argument:

> I strongly believe and I argue to you that because [Jordan and Emmanuel] both were at Ms. Guthertz [sic] car at the same time, one at the hood, one in the back, it was at that point they switch weapons.  I don't know why.  I have a theory, I'm going to give you guys why.
>
> They switch weapons at this point.  We know they're both there.  How do we know they switched?  Because Mr. Blas Atalig says a guy with no shirt now has a machete. . . .
>
> . . . .
>
> Jordan and Emmanuel switch weapons.  Jordan's the older guy.  He says, little brother I got you.  Give me that.  Go hide the murder weapon.  They think they killed [E.R.].  They think they killed [E.R.], go hide the murder weapon.  Why else would he come back?  Why else would Emmanuel come back if they're already gone? Because he already ditched it.  That's how we know they switched.  So that's very powerful.

Tr. at 98-100 (Jury Trial, Aug. 30, 2019).  Jordan argues this portion of the prosecutor's closing argument constitutes prosecutorial misconduct on several grounds: that it amounted to both vouching and bolstering, that it was not supported by the evidence adduced at trial, and that it was erroneous because the prosecutor improperly gave his personal impression of the evidence when he told the jury what he "strongly believe[d]."  Appellant's Br. at 34-39.

[43]     We first address Jordan's contention that this line of argument amounts to both vouching and bolstering; it is neither.  Under Guam law, "[v]ouching occurs when the government places the 'prestige of the government behind the witnesses through personal assurances of their veracity' and is improper."  *People v. Moses*, 2007 Guam 5 ¶ 16 (quoting *People v. Ueki*, 1999 Guam 4 ¶ 19).  Thus, "the term 'vouching' is basically restricted to the concept of an attorney personally

assuring the truthful nature of the testimony of a witness to the trier of fact." *Finik*, 2017 Guam 21 ¶ 28 (quoting *Nickell v. State*, 885 P.2d 670, 677 (Okla. Crim. App. 1994) (Lumpkin, P.J., concurring)). The prosecutor did not assure the jury of the truthful nature of one witness, or even all the witnesses collectively; he presented his own theory, which was not based on the testimony of any particular witness. This tactic *was* erroneous, but it was not vouching, as no witness was vouched for.

[44]    Bolstering "'constitutes nothing more than "preemptive rehabilitation" of a witness' through the testimony of another witness." *Id.* (quoting *Nickell*, 885 P.2d at 677 (Lumpkin, P.J., concurring)). Bolstering, as distinct from vouching, generally refers to using a witness—not the prosecutor's own theory—to strengthen the credibility of another witness. *See People v. Tedtaotao*, 2016 Guam 9 ¶ 26. Here, the prosecutor's statement did not preemptively rehabilitate a witness through the testimony of another witness. The statement was not "preemptive" because it was made during closing arguments, where no other witnesses were to be called. And the statement did not rehabilitate a witness because it did not address, much less strengthen, the testimony of any particular witness. Thus, the prosecutor's tactic was similarly not bolstering.

[45]    Jordan next argues, more compellingly, that the prosecutor's tactic was erroneous because it argued facts not in evidence. We have held that "arguing facts not in evidence constitutes attorney misconduct." *Cepeda*, 2021 Guam 9 ¶ 59 (collecting cases); *HRC Guam Co. v. Bayview II L.L.C.*, 2017 Guam 25 ¶ 103. An attorney "may 'indulge in all fair arguments' but 'may not assume facts not in evidence or invite the jury to speculate as to unsupported inferences.'" *Cepeda*, 2021 Guam 9 ¶ 59 (quoting *HRC*, 2017 Guam 25 ¶ 103). Here, we must distinguish separate portions of the transcript quoted above. While Jordan argues broadly that the entire weapon-trading theory was unsupported by the evidence, we disagree. The basic premise that the

defendants may have traded weapons was a fair argument based on the evidence. Witness testimony suggested there was only one machete in use, but also suggested that at different times throughout the incident, Jordan and Emmanuel each possessed the machete. The prosecutor's theory that Jordan and Emmanuel traded the machete sometime during the altercation was not unreasonable; it was a fair theory to tie together disparate testimonies.

[46] But the portion of the prosecutor's argument above beginning with the phrase "little brother, I got you" is problematic. Nothing in the record suggests such a conversation happened. We assume the prosecutor intended his argument illustratively, not literally, but he did not clarify his purpose. His presentation of this alleged conversation could therefore have misled the jury into assuming there had been evidence this conversation happened; the jury then could have relied on this non-existent evidence to resolve key ambiguities regarding when and how the machete was wielded by both Jordan and Emmanuel. A closing argument that relies on evidence not in the record is improper. *See, e.g.*, *State v. Pierce*, 280 P.3d 1158, 1170 (Wash. Ct. App. 2012) (reversing conviction based in part on prosecutor's "fabricated and inflammatory account" of offense); *Coreas v. United States*, 565 A.2d 594, 603-04 (D.C. 1989) (finding error in prosecutorial theory far-attenuated from evidence presented).

[47] Yet while the "little brother, I got you" line of argument was erroneous, it did not amount to plain error. Plain error requires the defendant to prove that the misconduct affected his "substantial rights." We have held that prosecutorial misconduct does not affect a defendant's substantial rights where "it is unlikely [that the] specific instance of [misconduct] affected the outcome" of the trial. *Reyes*, 2020 Guam 33 ¶ 30; *see also People v. Mendiola*, 2010 Guam 5 ¶ 24. In *People v. Reyes*, we also held that "substantial evidence of [the defendant's] guilt" was a factor that militates against finding that the defendant's rights were substantially affected by an

instance of prosecutorial misconduct. 2020 Guam 33 ¶ 30; *see also People v. Kanistus*, 2017 Guam 26 ¶ 28 ("[E]rrors do not affect substantial rights when the prosecution presented overwhelming evidence of guilt regarding the issue or element affected by the claimed error."). Here, there was substantial evidence of Jordan's guilt, including extensive testimony both by his victims and other witnesses, several authenticated photographs of the damage he caused, and video footage that appeared to show him committing at least one of the charged acts. Given this extensive evidence of Jordan's guilt, we find it unlikely that the jury would have acquitted him but for the prosecutor's erroneous line of argument. *Cf. People v. Evaristo*, 1999 Guam 22 ¶ 34 (defendant's substantial rights were not harmed where "the jury was free to judge for itself the weight of the evidence presented and the credibility of the testifying witnesses"). The "little brother, I got you" argument was erroneous, but not plainly erroneous.

[48]    Jordan next argues that the prosecutor committed misconduct by presenting his personal belief in what occurred. The prosecutor began his weapon-trading theory by stating, "I strongly believe" in the theory he then presented. Tr. at 98 (Jury Trial, Aug. 30, 2019). This was also erroneous. We have reproved the practice of prosecutors imparting their personal belief into their arguments, holding that "any insinuation of personal knowledge or belief of the defendant's guilt constitutes prosecutorial misconduct." *Cepeda*, 2021 Guam 9 ¶ 59 (collecting cases). We have similarly described the prosecutor's use of the personal pronoun "I" as "problematic, as 'a prosecutor has no business telling the jury his individual impressions of the evidence.'" *Reyes*, 2020 Guam 33 ¶ 29 (quoting *Moses*, 2007 Guam 5 ¶ 31). The prosecutor therefore erred by telling the jury he "strongly believe[d]" in the theory he was about to present.

[49]    But this was not plain error for the same reason the previous line of argument was not: we find it similarly unlikely that this error affected the outcome of the trial. Again, there was strong

evidence of Jordan's guilt from many sources; we do not think a reasonable jury would have acquitted Jordan but for this instance of prosecutorial misconduct. It was erroneous for the prosecutor to state what he "strongly believed," but it was unlikely that Jordan's substantial rights were affected by the error. *Cf. Reyes*, 2020 Guam 33 ¶¶ 29-31 (declining to reverse on basis of improper "personal pronoun" usage). As in *Reyes*, we decline to reverse here for the improper use of a personal pronoun, though we again warn the People to avoid using this tactic before a jury.

[50] Additionally, Jordan argues that the prosecutor committed misconduct by arguing punishment to the jury. The prosecutor urged the jury to find Jordan guilty in part because "people's lives are impacted by this." Tr. at 100 (Jury Trial, Aug. 30, 2019). The People concede error here, Appellee's Br. at 30 (Mar. 17, 2022), but argue any error was harmless. We agree with the People. Once again, we find it unlikely that Jordan's substantial rights were affected by this error. The evidence against Jordan was strong, and the prosecutor did not dwell on this erroneous argument; this short phrase was the only instance in which the prosecutor argued punishment to the jury, and then only indirectly through insinuation. Thus, while the prosecutor erred, this error was too minor to affect the outcome of trial, and it therefore did not affect Jordan's substantial rights. We decline to reverse Jordan's convictions based on prosecutorial misconduct.[5]

## V. CONCLUSION

[51] The evidence was sufficient to sustain each of the four base convictions—namely, two counts of Criminal Mischief (as a Third Degree Felony) and two counts of Terrorizing (as a Third Degree Felony). The evidence was also sufficient to sustain three of the four Special Allegations of Possession or Use of a Deadly Weapon in the Commission of a Felony—namely, Charge Seven,

---

[5] Although we do not reverse Jordan's convictions because of prosecutorial misconduct, we re-emphasize that misconduct of this nature poses a grave risk to the propriety of the convictions obtained. We warn the People that similar errors in a case when the evidence of guilt is not as strong could result in a reversal.

Counts Two and Three; and Charge Eight, Count Three. We therefore affirm these convictions. However, the evidence was insufficient to sustain the Special Allegation attached to Charge Eight, Count One (Criminal Mischief against Aurora Pastrana), and we reverse the conviction for this Special Allegation. Finally, the prosecutor's challenged comments were not plainly erroneous and thus do not merit reversal. We therefore **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the trial court for further proceedings not inconsistent with this opinion.


/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
F. PHILIP CARBULLIDO
Chief Justice